782 N.W.2d 900 (2010)
279 Neb. 869
Troy and Shari STONACEK, appellees,
v.
CITY OF LINCOLN, a political subdivision, appellant.
Bradley E. Sheaff and Jennifer K. Sheaff, appellees,
v.
City of Lincoln, a political subdivision, appellant.
George Bristol and Lori Bristol, appellees,
v.
City of Lincoln, a political subdivision, appellant.
Nos. S-09-230, S-09-231, S-09-232.
Supreme Court of Nebraska.
May 14, 2010.
*903 John V. Hendry, Lincoln City Attorney, and Steven Huggenberger, Lincoln, for appellant.
Gary J. Nedved, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., Lincoln, for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF THE CASE
This appeal involves three separate lawsuits brought by homeowners, appellees, who built homes in an area near a tributary of the Cardwell Branch stream and experienced flooding in their homes. The lawsuits were consolidated by the district court for Lancaster County. Numerous parties named as defendants settled prior to trial, leaving the City of Lincoln, appellant, as the sole defendant at trial. Appellees claimed that the city was negligent when it did not give them the *904 most recent information regarding the flood elevations of their properties prior to building their homes and issued various permits relating to the development in which their homes were located. The city argued, inter alia, that it was immune from suit based on exceptions to Neb.Rev.Stat. § 13-910 (Reissue 1997) of the Political Subdivisions Tort Claims Act (Tort Claims Act) and that it did not owe appellees a duty under the flood plain management statutes, Neb.Rev.Stat. § 31-1001 et seq. (Reissue 1998), and the State of Nebraska Department of Natural Resources (Department) administrative regulations promulgated thereunder or the Lincoln Mun. Code § 27.55.040(g) (1996). The district court determined that the city owed appellees a duty and therefore the city was liable, and the court awarded damages. The district court denied the city's consolidated motion for new trial, and the city appeals. We reverse the district court's decisions and remand the causes with directions to dismiss the complaints.

STATEMENT OF FACTS
Appellees, Troy and Shari Stonacek, Bradley E. Sheaff and Jennifer K. Sheaff, and George Bristol and Lori Bristol, each purchased a home in the Cardwell Woods development, which was located near a tributary to the Cardwell Branch stream. Appellees have all experienced flooding in their homes and claim that the city was negligent in managing information regarding the base flood elevations for the Cardwell Woods development and issuing various permits related to the development.
In designating its flood zones, the city has adopted the Federal Emergency Management Agency's "Digital Flood Insurance Rate Map" (FEMA map). The FEMA map was developed as part of the National Flood Insurance Program and shows several different flood zones.
Because some of the zones on the FEMA map that are generally designated as flood plains have not been studied, when a building permit application is made for a property in or near an area designated on the FEMA map, it has been the practice of the city to request that the Department conduct a flood plain study.
In December 1996, the city requested that the Department conduct a flood plain study of the previously unstudied tributary to the Cardwell Branch stream. The request was made based on building permit applications for homes in the Cardwell Woods development, an area that was adjacent to the tributary. These permits were not sought by appellees.
In response to this request, in January 1997, the Department provided the city with a flood plain map which contained flood elevations along with other data for the tributary to the Cardwell Branch stream. The map did not show all of the property that was being developed in the subdivision, but, rather, showed the property near and adjacent to the tributary of the Cardwell Branch stream. The district court determined that the study conducted by the Department found flood plain elevations along the tributary that were substantially different from the flood plain elevations which had been found in the FEMA map. The FEMA map showed a flood plain elevation for the area of 1201 feet above sea level, whereas the Department's map showed a flood plain elevation ranging from 1206 to 1209 feet above sea level.
Subsequent to the December 1996 Department study, appellees purchased land and built homes along the tributary. The Stonaceks purchased their lot in May 1998. The Sheaffs purchased their lot in August 1999. The Bristols purchased their lot in October 2003. The Bristols' lot was one of the lots adjacent to the tributary to the *905 Cardwell Branch stream. The Stonaceks' and Sheaffs' lots were not adjacent to the tributary. The record shows that in January 2006, the Lincoln City Council adopted changes to the local flood plain maps which included all of appellees' properties as being within the flood-prone area.
Troy Stonacek directly requested flood plain information on his lot from the city before building commenced. The city's flood plain administrator provided Stonacek with only the FEMA map information showing a flood plain elevation of 1201 feet above sea level. The Sheaffs and the Bristols received flood plain information through their builders. All appellees acquired building permits from the city's building and safety office. In each case, appellees were told either directly or through their builders that their lots were not located in the flood plain. Each appellee's building permit was issued based on the FEMA map which showed a flood plain elevation of 1201 feet above sea level rather than the Department map which showed a flood plain elevation of 1206 to 1209 feet above sea level. Appellees were not informed that the Department map existed or that the study had been conducted.
The three homes were constructed. The Stonaceks' basement was built at an elevation of 1201.8 feet above sea level. The Bristols' basement was built at an elevation of 1202.9 feet above sea level. The Sheaffs' basement was built at an elevation of 1201.2 feet above sea level. Each home experienced flooding.
At trial, there was evidence that for at least some period of time, the Department's map was kept in the Cardwell Woods development file in the city's building and safety office. The city acknowledged that the map had been misplaced and that the city had requested a replacement. The information on the map was not incorporated into the FEMA map. At trial, it was the city's position that the Department map contained no information pertinent to the inquiries of appellees or their building permit applications, because the map did not establish a flood plain elevation different from the FEMA map, and, as to the Stonaceks and Bristols, did not include their lots on the map.
In 2004, the U.S. Geological Survey undertook a remapping of the Cardwell Branch area as part of a project to study the flood plain elevations on the FEMA map. The remapping showed that along the tributary, the elevation of the 100-year flood event corresponded with the Department map. Appellees testified that when the U.S. Geological Survey's study was presented to them in 2005, that was the first time they became aware that the flood elevations of their properties were different from those which had been provided by the city.
The Stonaceks filed a complaint against the developer, the engineer who did the engineering work related to the subdivision, the Realtor who sold their lot to them, and the realty company of the Realtor. In April 2006, the complaint was amended to add the city as a defendant.
The Sheaffs and the Bristols filed complaints against the developer, the engineer who did the engineering work related to the subdivision, the Realtor who sold their lots to them, the realty company, and the city. All of the defendants except the city were dismissed from the suits after a settlement agreement was reached. Shortly thereafter, the three cases were consolidated.
The controlling complaints alleged that the city was negligent in the following ways:
a. In failing to advise [appellees] of the study provided by the [Department] and the base flood elevation information for the Cardwell Woods development.

*906 b. In failing to follow the minimum standards for flood plain management programs enacted by the [Department].
c. In violating Neb.Rev.Stat. § 31-1019.
d. In issuing a permit to construct a residence on [appellees'] property ....
e. In failing to require that the final plat for Cardwell Woods contain[s] base flood elevation data ....
The pretrial order reflected these five allegations.
The district court bifurcated the proceedings as to liability and damages. The liability trial was held on June 25 and 26 and July 25, 2007. At trial, the court considered appellees' five claims of negligence. The city asserted various defenses, including that the complaints were barred by the statute of limitations, the statutory and other provisions relied on by appellees did not create a duty to appellees, and it was immune from suit based on exceptions to the Tort Claims Act. The city made various motions seeking dismissal of the complaints. The motions were denied.
On September 25, 2007, the district court issued a consolidated order finding liability against the city. In its order, the district court stated the following: (1) that the city had in its possession from the Department more detailed and accurate flood plain elevations than that displayed on the FEMA map prior to, and at the time when, appellees built their homes; (2) that the director of the city's building and safety office had a duty to acquire from the Department the information contained on the Department map; (3) that once obtained, the director of the city's building and safety office had a duty to provide the data obtained from the Department to appellees and their builders; (4) that had the city provided each appellee with the map it possessed, appellees would either have constructed their homes above the flood plain elevation shown on the Department map or would not have purchased the property where their homes are located; and (5) that the city was negligent and the city's negligence was a proximate cause of damages to appellees.
After making these determinations, the district court concluded that § 31-1001 and Lincoln Mun.Code § 27.55.040(g) created a duty that the city owed to appellees and that given such duty, these provisions created a basis for civil liability. With respect to the defenses under the Tort Claims Act, the district court concluded that because the city had proved an "adequate defense" for the claims of negligence identified in the complaints as (d) and (e), based on the building permit exception to the Tort Claims Act at § 13-910(4), it was immune from liability as to claims (d) and (e) but that the city was not immune from suit under other exceptions to the Tort Claims Act. Claims (d) and (e) were effectively dismissed. For its conclusion, the district court decided that the city "is negligent in one of the ways alleged by the plaintiffs, and that the City's negligence has caused some damage to the plaintiffs."
After the issuance of the order finding liability, the cases came before the district court on the issue of damages on December 1, 2008. In a subsequent consolidated order, the court awarded appellees monetary damages. The city moved for a new trial, and the motion was denied. The city appeals.

ASSIGNMENTS OF ERROR
The city asserts, restated and summarized, that the district court erred (1) when it failed to conclude that all claims were exempt from suit under the Tort Claims Act after it properly concluded that two permit-based claims were exempt; (2) when it concluded that § 31-1001 et seq. and 258 Neb. Admin. Code, ch. 1 (2005), created a duty by the city to appellees; (3) *907 when it concluded that Lincoln Mun.Code § 27-55.040(g) created a duty to appellees and that no exception in the Tort Claims Act, including the misrepresentation exception, applied to this negligence claim; and (4) when it denied the city's consolidated motion for new trial. Because the resolution of these assignments of error disposes of the cases, we do not recite or consider the city's remaining assignments of error.

STANDARDS OF REVIEW
The meaning of a statute is a question of law. Kuhn v. Wells Fargo Bank of Neb., 278 Neb. 428, 771 N.W.2d 103 (2009). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. Id.
In actions brought pursuant to the Tort Claims Act, the factual findings of the trial court will not be disturbed on appeal unless they are clearly wrong. When determining the sufficiency of the evidence to sustain the trial court's judgment, it must be considered in the light most favorable to the successful party; every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can be deduced from the evidence. See Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch., 267 Neb. 958, 679 N.W.2d 198 (2004).
A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. Poppe v. Siefker, 274 Neb. 1, 735 N.W.2d 784 (2007).

ANALYSIS

The Dismissal of Claims (d) and (e) Did Not Require Dismissal of All Five Claims Because Appellees' Negligence Claims Are Not All Permit Based.
The city asserts that given the allegations and evidence, all of appellees' negligence claims stemmed from the issuance of the building permits and that therefore, all five claims, not just two, should have been dismissed under the permit-based exception to the Tort Claims Act at § 13-910(4). The city asserts that the district court erred when it allowed three of appellees' negligence claims identified as (a), (b), and (c) to go forward after properly dismissing the two negligence claims identified as (d) and (e) based on the permit exception to the Tort Claims Act. We do not agree with the city's characterization of the negligence claims or its proposition that immunity under one exception to the Tort Claims Act necessarily should have resulted in a dismissal of these complaints in their entirety.
The Tort Claims Act allows a limited waiver of a political subdivision's sovereign immunity. This waiver is limited by specifically delineating claims that are exempt from being brought against a political subdivision such as the city. See § 13-910(1) to (12). The exception relative to permit-based claims is found at § 13-910(4) and provides that the Tort Claims Act shall not apply to "[a]ny claim based upon the issuance, denial, suspension, or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, or order."
Based on this exception in the Tort Claims Act, the district court determined that appellees' claims of negligence in their complaints identified as "d.... issuing a permit to construct a residence" and "e.... failing to require that the final plat for Cardwell Woods contain[s] base flood elevation data," were permit-based claims barred by the Tort Claims Act and thus effectively dismissed these claims. See Rohde v. City of Ogallala, 273 Neb. 689, 731 N.W.2d 898 (2007). Appellees did not file a cross-appeal challenging this ruling, and we need not address the substantive correctness of this ruling.
*908 At issue on appeal relative to § 13-910(4) is the argument by the city that all of the claims of negligence flow from the issuance of the building permits and, therefore, all of the claims were barred by this provision of the Tort Claims Act and that the district court erred when it failed to dismiss all the claims. We find this assignment of error to be without merit.
After the dismissal of the two claims identified as (d) and (e) in the complaints, three claims remained. The remaining three allegations, (a), (b), and (c), set forth in appellees' amended complaints, alleged that the city was negligent: "a. In failing to advise [appellees] of the study provided by the [Department] and the base flood elevation information for the Cardwell Woods development. b. In failing to follow the minimum standards for flood plain management programs enacted by the [Department]. c. In violating Neb.Rev. Stat. § 31-1019."
These three negligence claims do not arise out of the issuance, denial, suspension, or revocation of or failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, or order. See § 13-910(4). Rather, these claims and the evidence surrounding them relate to the city's compliance with various statutory provisions and the city's alleged duty to advise appellees of accurate flood plain information. The plain language of § 13-910(4) does not exempt these claims from suit, and we conclude that the district court did not err when it did not dismiss negligence claims (a), (b), and (c) under the permit exception to the Tort Claims Act at § 13-910(4).

The City Did Not Owe Appellees a Duty Based on § 31-1019 or the Department's Regulations, and Claims (b) and (c) Should Have Been Dismissed.
Appellees' amended complaints and the trial record show that appellees claimed the city was negligent in failing to follow the minimum standards for flood plain management programs, the flood plain management statutes at § 31-1019, and the Department's regulations. The district court concluded that these authorities created a duty to appellees to maintain accurate mapping giving rise to civil liability. The city asserts the district court erred in concluding that these authorities created a duty and that the district court erred when it failed to dismiss appellees' negligence claims (b) and (c) based on these provisions. We agree with the city and conclude that the district court erred as a matter of law when it concluded these provisions created a duty for negligence purposes and failed to dismiss claims (b) and (c).
At issue in this assignment of error are the following provisions:
Section 31-1019, which stated in part:
When the [Department], a federal agency, or any other entity has provided a local government with sufficient data and maps with which to reasonably locate within its zoning jurisdiction any portion of the flood plain for the base flood of any watercourse or drainway, it shall be the responsibility of such local government to adopt, administer, and enforce flood plain management regulations which meet or exceed the minimum standards adopted by the [Department] pursuant to subdivision (5) of section 31-1017.
The Department's "Minimum Standards for Floodplain Management Programs" are standards "for the adoption, administration, and enforcement of floodplain management regulations by cities, villages, and counties in Nebraska in accordance with section 31-1019, R.R.S. 1943." See 258 Neb. Admin. Code, ch. 1, § 001.
The district court concluded that under the standard set forth in this court's decision *909 in Claypool v. Hibberd, 261 Neb. 818, 626 N.W.2d 539 (2001), the flood plain management statutes found at § 31-1001 et seq. and the Department's administrative regulations created a general duty to the public at large and a private right of action.
In addressing the city's assignment of error, we note that the threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff. See Claypool, supra. If there is no legal duty, there is no actionable negligence. See id. In determining whether a statute or ordinance creates a duty, we stated in Claypool that
[a] court may determine that a statute gives rise to a tort duty to act in the manner required by the statute where the statute is enacted to protect a class of persons which includes the plaintiff, the statute is intended to prevent the particular injury that has been suffered, and the statute is intended by the Legislature to create a private liability as distinguished from one of a public character.
261 Neb. at 825, 626 N.W.2d at 545. See, also, Fimple v. Archer Ballroom Co., 150 Neb. 681, 35 N.W.2d 680 (1949) (considering duty owed under city ordinance).
In Claypool, we recognized that where the Legislature has not by its express terms or by implication provided for civil tort liability, under principles of judicial restraint, it is prudent that we not do so. In Claypool, we made clear that consideration of the Legislature's purpose in enacting a statute is central to the analysis of whether the statute defines a duty in tort and creates private civil liability.
Section 31-1001 sets forth the legislative purpose for the flood plain management statutes as follows:
(2) The purposes of sections 31-1001 to 31-1023 shall be to:
(a) Accelerate the mapping of flood-prone areas;
(b) Assist local governments in the promulgation and implementation of effective flood plain management regulations and other flood plain management practices;
(c) Assure that when state lands are used and state-owned and state-financed facilities are located and constructed, flood hazards are prevented, flood losses are minimized, and the state's eligibility for flood insurance is maintained; and
(d) Encourage local governments with flood-prone areas to qualify for participation in the national flood insurance program.
The foregoing language of the legislative purpose deals with the general duties of the governmental entities in managing flood plains and remaining eligible for insurance. The focus of the statute is on state-owned lands and projects. The language of the statute does not explicitly create a private civil tort liability based on a failure to properly implement the requisite flood plain management.
In addition to the language regarding purpose, we consider the explicit remedies provided in the flood plain management statutes, because the remedy informs us about the scope of the duty. As the city points out, § 31-1020 sets forth a remedy for landowners where a city fails to follow § 31-1019. Section 31-1020 stated in part:
If a local government does not adopt and implement flood plain management regulations in accordance with section 31-1019 within one year after flood hazard data and maps have been provided to it pursuant to such section, the [Department] shall, upon petition of at least ten percent of the owners of the land located within the flood plain of the base flood delineated in such maps, or *910 upon the written request of the board of directors of the natural resources district in which such land is located, conduct a public hearing after providing notice pursuant to section 31-1022. If the [Department] finds after such hearing that the data and maps available are sufficient to reasonably locate the boundaries of the base flood, the [Department] shall determine and fix by order the boundaries of the base flood and, where deemed appropriate, the boundaries of the floodway within the zoning jurisdiction of such local government. If within three months after the date of such order the local government still has not adopted and implemented flood plain management regulations for the area subject to such order in accordance with section 31-1019, the [Department] shall be vested with the power and authority to adopt flood plain management regulations for the area and shall adopt and promulgate such regulations for the identified base flood within the zoning jurisdiction of such local government.
We believe that the foregoing provisions of a statutory remedy for landowners under § 31-1020 are inconsistent with a purported legislative intention to create a tort duty. Further, the plain language of § 31-1019 does not intend to prevent the particular injury that has been suffered by appellees. See Claypool v. Hibberd, 261 Neb. 818, 626 N.W.2d 539 (2001).
We apply a similar analysis to title 258, chapter 1, of the Nebraska Administrative Code, which merely instructed the Department to implement the statutory requirements regarding flood plain management found in § 31-1019 and did not create a duty giving rise to civil tort liability.
Because these authorities do not expressly or by implication indicate that they create a private tort liability, the district court erred in concluding that appellees had a private action in which the city owed appellees a duty under § 31-1019, and 258 Neb. Admin. Code, ch. 1. Accordingly, because there is no duty owed under these authorities, appellees' negligence claims based on these authorities fail and the district court erred when it failed to dismiss negligence claims (b) and (c).

Appellees' Claims Based on Lincoln Mun. Code § 27-55.040 Regarding Alleged Failure To Advise Appellees of the Department Map Is a Claim for Negligent Misrepresentation and Is Barred by the Tort Claims Act, and Claim (a) Should Have Been Dismissed.
The city asserts that the district court erred when it found liability and awarded damages to appellees based on appellees' negligence claim (a), which alleged that the city was negligent for failing "to advise [appellees] of the study provided by the [Department] and the base flood elevation information for the Cardwell Woods development." The city refers us to the exception to the Tort Claims Act found at § 13-910(7), which excepts from the Tort Claims Act claims for misrepresentation. Specifically, the city argues that the gravamen of negligence claim (a) is that the city negligently misrepresented the flood plain data and that this claim is exempt from being actionable under the misrepresentation exception of the Tort Claims Act. Given the jurisprudence surrounding the misrepresentation exception, we agree with the city and conclude that the district court erred when it failed to dismiss claim (a), which alleged a failure to advise appellees.
In reaching its conclusion that the city was liable to appellees based on its purported failure to advise appellees of the Department map as alleged in claim (a), the district court relied primarily on Lincoln Mun.Code § 27.55.040 as a source of this duty to appellees. At the time appellees' *911 building permits were issued, § 27.55.040 provided:
It shall be the duty of the Director of Building and Safety to enforce this chapter. His duties shall include, but not be limited to:
....
(g) When base flood elevation data have not been provided on the official map, obtain, review, and reasonably utilize any base flood elevation and floodway data available from a federal, state, or other source, as criteria for requiring that new construction, substantial improvements, or other developments in flood plain meet the standards of this chapter.
The district court declined to characterize the failure to advise alleged in claim (a) as a "misrepresentation" and therefore concluded that the Tort Claims Act provision exempting claims for misrepresentation was inapplicable. See § 13-910(7). The district court erred as a matter of law when it deemed § 13-910(7) inapplicable and failed to dismiss claim (a).
We need not decide whether the city owed a duty to advise appellees of the existence of the Department map. Assuming but not deciding that the city did owe appellees such a duty under the city code at issue, any breach of that duty falls within the Tort Claims Act's misrepresentation exception.
The Tort Claims Act's misrepresentation exception immunizes political subdivisions from claims of "misrepresentation, deceit, or interference with contract rights." § 13-910(7). The leading U.S. Supreme Court case considering this exception under the Federal Tort Claims Act is United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). In that case, a home buyer reasonably relied on an erroneous Federal Housing Administration appraisal and the Supreme Court determined that the plaintiff's negligence claim was barred by the misrepresentation exception to the Federal Tort Claims Act. We find cases under the Federal Tort Claims Act to be instructive and join other states employing the Neustadt reasoning to the analysis of the misrepresentation exception under state tort claims acts. See, e.g., Gibson v. Evansville Vanderburgh Bldg., 725 N.E.2d 949 (Ind.App.2000).
In addressing the claims in Neustadt, the U.S. Supreme Court observed that the federal misrepresentation exception insulates the government against liability for conveying false or inaccurate information, whether that information was conveyed based on willful or negligent misrepresentation. In determining that the Federal Tort Claims Act excepts acts of misrepresentation, the Supreme Court defined negligent misrepresentation as the breach of "the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs." Neustadt, 366 U.S. at 706, 81 S.Ct. 1294. It has been observed that the "prophylaxis of the misrepresentation exception extends to failures of communication." Muniz-Rivera v. U.S., 326 F.3d 8, 13 (1st Cir.2003).
After Neustadt, the U.S. Supreme Court again addressed the misrepresentation exception in Block v. Neal, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). In Block, the Supreme Court focused on the distinction between the duty to obtain and communicate accurate information from the duty to perform a separate task. In Block, the plaintiff received a loan from the Farmers Home Administration (FmHA) to build her home. The loan agreement provided that the FmHA should approve all plans and could inspect and test all materials. The completed house was defective, and plaintiff sued the FmHA alleging that it had failed to properly inspect and supervise construction. *912 The FmHA defended by arguing that the suit was barred by the misrepresentation exception in the Federal Torts Claims Act. The Supreme Court determined that the claim was not barred because the FmHA was subject to suit for allegedly breaching a separate duty to supervise the construction and that this duty was independent of its duty to communicate information. The Supreme Court in Block distinguished Neustadt, concluding that the gravamen of the action against the government in Neustadt was that the plaintiffs were misled by the appraisal statement of the Federal Housing Administration prepared by the government, whereas Block involved a separate duty to act. Block, supra.
This court has made a similar distinction in Wickersham v. State, 218 Neb. 175, 354 N.W.2d 134 (1984) disapproved on other grounds, D.K. Buskirk & Sons v. State, 252 Neb. 84, 560 N.W.2d 462 (1997). In Wickersham, we stated that where the gravamen of the complaint is negligent performance of operational tasks rather than misrepresentation, the State cannot rely upon the misrepresentation exception in the State Tort Claims Act. We concluded that a misrepresentation was not at issue in Wickersham.
In considering whether dissemination of information or a separate duty to act is at issue in a case, courts have noted that when government misinformation is at issue, a plaintiff must allege injury independent of that caused by the erroneous information to avoid dismissal based on the misrepresentation exception. See, e.g., Block, supra; Guild v. United States, 685 F.2d 324 (9th Cir.1982); Rich Products Corp. v. U.S., 804 F.Supp. 1270 (E.D.Cal. 1992).
In the instant case, appellees urged and the district court concluded that their negligence claim (a) regarding a failure to advise is not barred by the misrepresentation exception because it is an actionable event akin to Block and Wickersham. We are not persuaded by this argument, and we conclude that the gravamen of the allegation of negligence in claim (a) in this case involved a failure by city employees to advise appellees of the accurate flood plain information for their homes and not a failure to "utilize" the data under the Lincoln Municipal Code, as the district court erroneously concluded.
This case centers around what flood plain elevation information was provided to appellees, either directly or indirectly by way of their builders, and what information the city failed to communicate. See Muniz-Rivera, supra. Appellees did not claim that the city owed them a separate duty to inspect or supervise the building of their homes. Compare Block, supra. In this case, appellees alleged in claim (a) that the city had failed to properly advise them of information. As the U.S. Supreme Court has stated, "[w]hile we do not condone carelessness by government employees in gathering and promulgating ... information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability." United States v. Neustadt, 366 U.S. 696, 710-11, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). We are similarly constrained.
Because the gravamen of claim (a) alleging a failure to advise involves the improper communicating of the flood plain information relevant to appellees' properties, the claim is based on a misrepresentation. As a matter of law, the actions of the city are shielded by the immunity provided by the misrepresentation exception in § 13-910(7) of the Tort Claims Act, and the district court erred when it did not dismiss negligence claim (a).

The District Court Erred When It Denied the City's Consolidated Motion for New Trial.
The city moved for a new trial. The district court denied the motion. A *913 motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. Poppe v. Siefker, 274 Neb. 1, 735 N.W.2d 784 (2007). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. Id.
The complaints contained five claims. The district court effectively dismissed claims (d) and (e) based on the permit exception to the Tort Claims Act. We have concluded that no duty exists as to claims (b) and (c) and that based on the misrepresentation exception to the Tort Claims Act, the city was immune from suit with respect to claim (a). Because all five claims should have been dismissed, the district court abused its discretion when it denied the city's consolidated motion for new trial seeking that the judgments in favor of appellees be vacated. Such rulings are, therefore, reversed.

CONCLUSION
After dismissing negligence claims (d) and (e) based on the permit exception to the Tort Claims Act, the district court correctly determined that not all of appellees' negligence claims were barred by the permit exception. The district court erred when it concluded that the city owed appellees a duty under § 31-1001 et seq., and the Department's regulations thereunder, and that these provisions created a private cause of action as sought in claims (b) and (c). Finally, appellees' allegation in claim (a) that the city was negligent for failing to advise them of the Department map, grounded in Lincoln Mun.Code § 27.55.040, is barred by the misrepresentation exception to the Tort Claims Act, regardless of whether a duty exists under the code. The district court erred when it failed to dismiss claim (a). All five claims of negligence should have been dismissed. Accordingly, the rulings of the district court denying the city's motions to dismiss were error and the denial of the city's consolidated motion for new trial asking that the judgments in favor of appellees be vacated is reversed. The judgments entered in favor of appellees are vacated, and the causes remanded with directions to dismiss the complaints.
REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.