Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/09/2024 09:08 AM CDT

Ray Ryan, appellant, v.
State of Nebraska, appellee.
___ N.W.3d ___

Filed August 9, 2024.    No. S-24-003.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

2. **Tort Claims Act: Appeal and Error.** Whether the allegations made by a plaintiff constitute a cause of action under the State Tort Claims Act or whether the allegations set forth claims which are precluded by the exemptions set forth in the act is a question of law, for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.

3. **Jurisdiction: Immunity.** The doctrine of sovereign immunity is, by its nature, jurisdictional, and presents a question of subject matter jurisdiction that courts cannot ignore.

4. **Constitutional Law: Actions: Legislature: Political Subdivisions.** Under Neb. Const. art. V, § 22, the State may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought. But this constitutional provision is not self-executing, and no suit may be maintained against the State or a political subdivision unless the Legislature, by law, has provided otherwise.

5. **Jurisdiction: Legislature: Immunity: Waiver.** Absent legislative action waiving sovereign immunity, a trial court lacks subject matter jurisdiction over an action against the State.

6. **Tort Claims Act: Legislature: Immunity: Waiver.** Through the enactment of the State Tort Claims Act, the Legislature has waived sovereign immunity with respect to some, but not all, types of tort claims.

7. **Negligence.** The threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff. If there is no legal duty, there is no actionable negligence.

8. ____. The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.
9. **Statutes: Legislature: Intent: Torts: Liability.** A court may determine that a statute gives rise to a tort duty to act in the manner required by the statute where (1) the statute is enacted to protect a class of persons which includes the plaintiff, (2) the statute is intended to prevent the particular injury that has been suffered, and (3) the statute is intended by the Legislature to create a private liability as distinguished from one of a public character.

Appeal from the District Court for Lancaster County, Andrew R. Jacobsen, Judge. Affirmed.

Ray Ryan, pro se.

Michael T. Hilgers, Attorney General, Eric J. Hamilton, and Grant D. Strobl for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## INTRODUCTION

An inmate in the custody of the Nebraska Department of Correctional Services (DCS) appeals from an order of the district court for Lancaster County, Nebraska, dismissing his negligence action against the State brought under the State Tort Claims Act (STCA).[1] The inmate asserts that DCS failed to fulfill its duty under Nebraska regulations to investigate his allegation that other inmates stole his property. The district court found that it lacked subject matter jurisdiction over the case because the inmate failed to plead a cognizable claim under the STCA, among other things. Because we agree with the district court that the inmate failed to plead a legal duty owed to him by the State under the regulations upon which he relies, we affirm.

---

[1] Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014 & Cum. Supp. 2022).

## BACKGROUND

The inmate here, Ray Ryan, initiated his suit against the State in August 2022, but the district court denied his application to proceed in forma pauperis and dismissed his case. We reversed that decision in a memorandum opinion filed on April 14, 2023, in case No. S-22-720, and remanded the matter for further proceedings.

On remand, Ryan filed an amended complaint alleging that while an inmate in DCS custody, he was transferred to segregated confinement in October 2021. Upon his return from segregated confinement, he discovered that "a bunch of his property" was missing from his cell. According to Ryan, "when an inmate goes to segregated confinement and his property [winds] up missing, it's because it had been stolen by other inmates; usually as a result of a staff member opening a cell door for another inmate who doesn't belong in the cell." Ryan informed several DCS staff members that his property had been stolen, but "[n]o reports were written, and no investigation took place to find out what had occurred with respect to the theft of his property." Ryan alleged that one DCS staff member told him that nothing could be done about lost or stolen property and that he could instead file a tort claim. Ryan alleged that the stolen property was never returned to him and that it had a value of $496.05. He also claimed that he "suffered and is suffering from mental and emotional distress" because of the incident.

As to his single cause of action, Ryan stated in his amended complaint:

> State officials . . . owed [him] a duty to file a report regarding [his] complaint and investigate the matter in accordance with Chapter 6 of Title 68 [of the Nebraska Administrative Code] where [he] complained of an inmate or inmates violating the Code of Offenses as promulgated by Chapter 5 of Title 68 [of the Nebraska Administrative Code].

Ryan also stated in his amended complaint that inmates violated the relevant regulations when they aided and abetted in the theft of his property and entered his cell without proper authorization and that DCS staff violated the regulations when they failed to file a misconduct report following the incident. Ryan alleged that DCS' failure to file a report and investigate the matter in accordance with the regulations constituted a breach of its duty and that this breach was the actual and proximate cause of him having "no chance of recovering any of his property." He sought $496.05 in damages from the State for the property and $1.5 million in damages for his "pain and suffering" due to DCS' negligence.

The State moved to dismiss the amended complaint on the grounds that the court lacked subject matter jurisdiction and that Ryan failed to state a claim upon which relief could be granted. The State argued, among other things, that the case should be dismissed because the DCS regulations Ryan cited did not create a legal duty owed to him and that, as such, he failed to plead a tort claim under the STCA.

The district court agreed with the State, finding, as relevant here, that the DCS regulations in question "relate[d] only to the filing of misconduct reports and investigations for purposes of facilitating the [DCS] disciplinary process and do not create a legal duty owed to [Ryan]." In other words, the district court concluded that the regulations do not give rise to a tort duty and that a violation of the regulations is not evidence of a breach of a legal duty that exists independent of the regulations. Because Ryan failed to show that DCS owed him a legal duty, the court determined that he failed to state a claim upon which relief could be granted. As such, the court determined that it lacked subject matter jurisdiction and dismissed the case.

Ryan timely appealed, and we moved the matter to our docket.[2]

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

## ASSIGNMENTS OF ERROR

Ryan assigns that the district court erred in dismissing his case for lack of subject matter jurisdiction and in failing to state a claim upon which relief can be granted under the STCA.

## STANDARD OF REVIEW

[1] A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[3]

[2] Whether the allegations made by a plaintiff constitute a cause of action under the STCA or whether the allegations set forth claims which are precluded by the exemptions set forth in the act is a question of law, for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.[4]

## ANALYSIS

In this appeal, Ryan contends that the STCA waives sovereign immunity for his negligence action against the State. He asserts that the State owed him a legal duty under the "Inmate Disciplinary Procedures" regulations[5] to investigate his allegation that his property was stolen from his cell and that therefore, he properly alleged a tort claim under the STCA sufficient to survive the State's motion to dismiss. We disagree. To explain our decision, we briefly review fundamental principles regarding sovereign immunity and the STCA before turning to the regulations that Ryan asserts create a tort duty.

### SOVEREIGN IMMUNITY AND STCA

[3-5] Under the common-law doctrine of sovereign immunity, a sovereign could not be sued in its own courts without

---

[3] *Barber v. State*, 316 Neb. 398, 4 N.W.3d 844 (2024).

[4] *Id.*

[5] 68 Neb. Admin. Code, ch. 6 (2023).

its consent.[6] The doctrine of sovereign immunity is, by its nature, jurisdictional, and presents a question of subject matter jurisdiction that courts cannot ignore.[7] In Nebraska, the sovereign immunity of the State and its political subdivisions is preserved in Neb. Const. art. V, § 22, which provides that "[t]he [S]tate may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought."[8] But this constitutional provision is not self-executing, and no suit may be maintained against the State or a political subdivision unless the Legislature, by law, has provided otherwise.[9] Therefore, absent legislative action waiving sovereign immunity, a trial court lacks subject matter jurisdiction over an action against the State.[10]

[6] Through the enactment of the STCA, the Legislature has waived sovereign immunity with respect to some, but not all, types of tort claims.[11] And no tort claim can be brought against the State, any state agency, or any employee of the State, except to the extent provided by the STCA.[12] Disputes over the STCA often center upon whether one of the exemptions to the State's limited waiver of sovereign immunity in

---

[6] *Brown v. State*, 315 Neb. 336, 996 N.W.2d 56 (2023). See, also, *Joshua M. v. State*, 316 Neb. 446, 457, 5 N.W.3d 454, 464 (2024) ("a state's immunity from suit is recognized as a fundamental aspect of sovereignty").

[7] *Joshua M., supra* note 6.

[8] See *Garcia v. City of Omaha*, 316 Neb. 817, 7 N.W.3d 188 (2024). See, also, *Rouse v. State*, 301 Neb. 1037, 921 N.W.2d 355 (2019) (noting that under 11th Amendment to U.S. Constitution, nonconsenting state is generally immune from suit unless that state has waived immunity).

[9] See *Garcia, supra* note 8. See, also, *Joshua M., supra* note 6, 316 Neb. at 458, 5 N.W.3d at 465 (describing Neb. Const. art. V, § 22, as "permit[ting] the State to lay its sovereignty aside and consent to be sued on such terms and conditions as the Legislature may prescribe").

[10] *Joshua M., supra* note 6.

[11] *Barber, supra* note 3. See § 81-8,210(4).

[12] See, § 81-8,209; *Doe v. State*, 312 Neb. 665, 980 N.W.2d 842 (2022).

the STCA apply.[13] Here, however, we confront a different question—whether Ryan plausibly alleged a "tort claim" as defined by the STCA. If he did not, the State's sovereign immunity was not waived, and the district court lacked subject matter jurisdiction over his suit.

The STCA's definition of a "tort claim" includes, as relevant here, "any claim against the State of Nebraska for money only on account of damage to or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the state."[14] In the present case, Ryan seeks money damages from the State for his stolen property based on the theory that DCS staff were negligent in failing to investigate his complaint regarding the theft, which negligence prevented the recovery of his property. The State, however, asserts that Ryan failed to plausibly allege the requisite elements of such a negligence action.

[7] The elements that a plaintiff must plausibly allege for an actionable negligence claim under the STCA are the same as for a negligence action generally: A plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.[15] The threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff.[16] If there is no legal duty, there is no actionable negligence.[17] We thus turn our analysis to whether Ryan plausibly alleged a negligence claim against the State by determining whether he showed that the State owed him a legal duty.

---

[13] See § 81-8,219.

[14] § 81-8,210(4).

[15] See *Doe, supra* note 12.

[16] *Reiber v. County of Gage*, 303 Neb. 325, 928 N.W.2d 916 (2019).

[17] *Stonacek v. City of Lincoln*, 279 Neb. 869, 782 N.W.2d 900 (2010).

No Legal Duty Owed by State Under
Applicable Regulations

Ryan asserts on appeal that 68 Neb. Admin. Code, ch. 6 (2023), which is unchanged in all material respects from the regulations in effect in 2021, and, by extension, the statutes under which the regulations were promulgated,[18] "require[] staff to . . . investigate misconduct by prisoners," such as when inmates enter another inmate's cell and take his or her property.[19] He argues that chapter 6 was enacted "to protect prisoners as well [as] prison staff and property from harm [and] to require prison staff to prevent injury."[20] In support of this argument, he relies on 68 Neb. Admin. Code, ch. 5 (2023), which at all relevant times prohibited conduct by inmates such as theft, being in unauthorized areas, and possessing or receiving unauthorized articles, each of which Ryan alleges other inmates committed here. Because any such offense may result in disciplinary action under chapter 6, Ryan argues that the regulations were designed to protect him and his property from harm. He concludes that when the DCS staff "failed to adhere to [these] regulations" by not filing a report and investigating the theft of his property, they "committed negligence against [him]" under the STCA.[21] These inmate disciplinary procedure statutes and regulations are the only authority Ryan asserts to support his theory that the State owed him a legal duty.

[8,9] Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.[22] The parties rely on a three-part test that we have used to determine whether a statute gives rise to a tort duty. That

---

[18] See Neb. Rev. Stat. §§ 83-4,109 to 83-4,123 (Reissue 2014 & Cum. Supp. 2022).

[19] Brief for appellant at 10.

[20] *Id.* at 9.

[21] *Id.*

[22] *Porter v. Knife River, Inc.*, 310 Neb. 946, 970 N.W.2d 104 (2022).

test considers whether (1) the statute is enacted to protect a class of persons which includes the plaintiff, (2) the statute is intended to prevent the particular injury that has been suffered, and (3) the statute is intended by the Legislature to create a private liability as distinguished from one of a public character.[23] The parties also suggest that this same test applies to regulations, like those at issue here. For purposes of our discussion, we assume without deciding that this is the case.

Applying the test to the inmate disciplinary procedure statutes and regulations that Ryan relies upon, we find that they were not enacted to protect a class of persons that includes Ryan. Ryan's arguments to the contrary are based on the mistaken premise that the applicable statutes and regulations were enacted to protect an inmate who seeks an investigation into other inmates' alleged misconduct. Based on their plain language, we instead find that the statutes and regulations were enacted to prescribe disciplinary procedures for inmates who allegedly engaged in that misconduct.[24]

Sections 83-4,109 to 83-4,123 govern the "[d]isciplinary procedures in adult institutions administered by [DCS]."[25] The Legislature stated that it enacted these disciplinary procedure statutes to, as relevant here, require DCS to adopt rules and regulations to establish criteria for determining the rights and privileges of inmates, including criteria concerning "disciplinary procedures and a code of offenses for which discipline may be imposed."[26] In addition, the statutes contain inmate grievance procedures,[27] which "allow inmates to communicate grievances" to corrections officials.[28]

---

[23] *Doe, supra* note 12 (citing *Claypool v. Hibberd*, 261 Neb. 818, 626 N.W.2d 539 (2001)).

[24] See, §§ 83-4,109 to 83-4,123; 68 Neb. Admin. Code, ch. 6 (2023).

[25] § 83-4,109.

[26] § 83-4,111.

[27] See Neb. Rev. Stat. §§ 83-4,135 to 83-4,139 (Reissue 2014).

[28] § 83-4,137.

As directed, DCS established regulations for "Inmate Disciplinary Procedures" in chapter 6.[29] The regulations clarify that the inmate disciplinary procedures are "designed to contribute to the efficient operation" of each facility and "to be conducive to the successful re-socialization of the inmates confined therein."[30] They also state that "[d]isciplinary action is used to regulate an inmate's behavior" and "to hold the inmate accountable for his/her misconduct and to deter that inmate and other inmates from engaging in similar misconduct in the future."[31] In chapter 5, DCS lists a "Code of Offenses" that prohibits certain inmate conduct.[32] A violation of that code "may result in disciplinary action" under chapters 5 and 6.[33] The regulations also contain a procedure for the "Filing and Logging of Misconduct Reports."[34] Section 005 of chapter 6 (Section 005) states:

> If an employee witnesses or has a reasonable belief that an infraction of the Code of Offenses has been committed by an inmate, the employee shall prepare a written report. The report shall be filed . . . within 72 hours of the occurrence of the infraction or the discovery of it. . . . The report shall be logged within 24 hours after the report is filed, which commences the investigation.[35]

In short, the disciplinary procedures within the relevant statutes and regulations both primarily include the measures that must be taken before an inmate is disciplined for misconduct, such as notice, review from a disciplinary committee, and a hearing; the principles governing disciplinary action and restrictions on the type of discipline and punishment an

---

[29] See 68 Neb. Admin. Code, ch. 6.

[30] *Id.* at § 002.

[31] *Id.* at § 003.01.

[32] See 68 Neb. Admin. Code, ch. 5 (2023).

[33] *Id.* at § 002.

[34] 68 Neb. Admin. Code, ch. 6, § 005.

[35] *Id.*

inmate can be subjected to; and a subsequent review of the disciplinary action taken and an appeals process.[36] None of these inmate disciplinary procedures, however, indicate that their purpose is to create a legal duty of the State, owed to an inmate, to file a certain type of report or undertake a particular type of investigation in response to other inmates' alleged misconduct against the inmate.

Ryan places particular emphasis on Section 005 of the regulations. He asserts that Section 005 "create[s] a duty upon [the State] to take certain steps specified therein to hold those responsible for stealing [his] property accountable, and to prevent [him] future harm."[37] However, it is apparent from the text of this regulation that while the procedure related to the filing of misconduct reports requires a DCS employee to prepare a written report when an inmate is suspected of committing an infraction, it does not create a legal duty owed to any inmate to file that report or investigate the suspected misconduct. Ryan fails to recognize this crucial distinction. His other arguments related to the State's duty owed to him under the regulations are likewise without merit.

Our determination that the applicable statutes and regulations were not enacted to protect an inmate like Ryan, who seeks an investigation into other inmates' alleged misconduct, is dispositive of whether Ryan plausibly alleged a duty he was owed by the State. We have found that if the authority for which a plaintiff relies upon fails to satisfy any of the three factors stated above, it cannot give rise to a tort duty.[38] There is, therefore, no need to consider the other two factors.

Because the inmate disciplinary procedure statutes and regulations that Ryan relies upon do not give rise to a tort duty of the State to investigate the alleged theft of Ryan's property, Ryan failed to state a claim of negligence under

---

[36] See, generally, §§ 83-4,109 to 83-4,123; 68 Neb. Admin. Code, ch. 6.

[37] Brief for appellant at 8.

[38] See *Stonacek, supra* note 17.

the STCA. As such, the State's sovereign immunity was not waived, and the district court lacked subject matter jurisdiction over Ryan's case.[39]

## CONCLUSION

The district court did not err in dismissing Ryan's complaint insofar as he alleged no negligence on the part of the State. Accordingly, we affirm the order of the district court.

Affirmed.

---

[39] See *Doe, supra* note 12, 312 Neb. at 681, 980 N.W.2d at 854 ("plaintiffs bringing an action under the STCA must plausibly allege a 'tort claim' as that term is defined under the STCA, both to survive a motion to dismiss for failure to state a claim and to establish subject matter jurisdiction").

Stacy, J., concurring.

I agree with the majority that no tort duty was created by the prison regulations on which Ray Ryan relies. But I think there is a more fundamental reason to affirm the district court's judgment of dismissal—Ryan's operative complaint did not allege a plausible "tort claim" as that term is defined under the State Tort Claims Act (STCA).[1]

The State sought dismissal of Ryan's complaint on two grounds: a lack of subject matter jurisdiction under Neb. Ct. R. Pldg. § 6-1112(b)(1) (rule 12(b)(1)) and the failure to state a claim upon which relief can be granted under § 6-1112(b)(6) (rule 12(b)(6)). The trial court correctly noted that under such circumstances, we instruct courts to consider the rule 12(b)(1) grounds first and address the rule 12(b)(6) grounds only if the court determines it has subject matter jurisdiction.[2] Following that order of operations, I agree with

---

[1] Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014 & Cum. Supp. 2022).

[2] See, *Holmstedt v. York Cty. Jail Supervisor*, 275 Neb. 161, 745 N.W.2d 317 (2008); *Anderson v. Wells Fargo Fin. Accept.*, 269 Neb. 595, 694 N.W.2d 625 (2005).

the district court that Ryan's complaint did not establish subject matter jurisdiction under the STCA.

Section 81-8,210(4) of the STCA defines a "tort claim" as

[A]ny claim against the State of Nebraska for money only on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the state, while acting within the scope of his or her office or employment, under circumstances in which the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death . . . .

We have recognized that under this definition, the type of tort claims that fall within the STCA's limited waiver of sovereign immunity are limited only to those for which a private person, under like circumstances, would be liable to the plaintiff in tort.[3] As such, a plaintiff bringing an action under the SCTA must plausibly allege a "tort claim" as that term is defined under the STCA to survive a motion to dismiss for lack of subject matter jurisdiction.[4]

Ryan's operative complaint alleged that after he reported property missing from his cell, prison officials had a duty to "file a report" and to "investigate" the matter under certain prison regulations. The complaint alleged prison officials breached that duty and, as a result, Ryan was damaged and "had no chance of recovering any of his property that was stolen."

Ryan does not argue there is a private analogue for this claim, and his complaint alleged no facts suggesting a private person, under like circumstances, would be liable to him in tort for such conduct. On this record, Ryan has failed to allege a plausible "tort claim" for which the State has waived its immunity under the STCA. I would affirm the dismissal on rule 12(b)(1) grounds.

---

[3] See *Doe v. State*, 312 Neb. 665, 980 N.W.2d 842 (2022).

[4] See *id.*