Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/22/2017 09:14 AM CDT

Jill B. and Travis B., individually and as parents
and next friends of B.B., a minor child,
appellants, v. State of Nebraska and
the Nebraska Department of Health
and Human Services, appellees.

___ N.W.2d ___

Filed June 30, 2017.    No. S-15-778.

1. **Tort Claims Act: Appeal and Error.** In actions brought pursuant to the State Tort Claims Act, the factual findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the verdict, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence.

2. **Statutes: Appeal and Error.** The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.

3. **Actions: Appeal and Error.** The law-of-the-case doctrine reflects the principle that an issue that has been litigated and decided in one stage of a case should not be relitigated at a later stage.

4. **Summary Judgment.** The overruling of a motion for summary judgment does not decide any issue of fact or proposition of law affecting the subject matter of the litigation, but merely indicates that the court was not convinced by the record that there was not a genuine issue as to any material fact or that the party offering the motion was entitled to judgment as a matter of law.

5. **Actions: Final Orders: Appeal and Error.** The law-of-the-case doctrine requires a final order. A party is not bound by a court's findings in an order that it was not required to appeal.

6. **Summary Judgment: Final Orders: Appeal and Error.** A denial of a motion for summary judgment is an interlocutory order, not a final order, and therefore not appealable.

7. **Tort Claims Act: Immunity: Waiver: Pleadings: Proof.** The exceptions found in Neb. Rev. Stat. § 81-8,219 (Reissue 2014) to the general waiver of tort immunity are matters of defense which must be pled and proved by the State.

8. **Pleadings: Notice.** The key to determining the sufficiency of pleading an affirmative defense is whether it gives the plaintiff fair notice of the defense.

9. **Pretrial Procedure: Pleadings.** The issues set out in a pretrial order supplant those raised in the pleadings.

10. **Tort Claims Act: Legislature: Immunity: Waiver.** Through the State Tort Claims Act, the Legislature has waived the State's immunity with respect to certain, but not all, types of tort actions.

11. **Tort Claims Act: Immunity: Waiver.** Under the intentional torts exception, sovereign immunity is not waived for claims arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

12. **Statutes: Immunity: Waiver.** Statutes that purport to waive the protection of sovereign immunity of the State or its subdivisions are strictly construed in favor of the sovereign and against the waiver. A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.

13. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

14. **Tort Claims Act: Immunity: Waiver.** The misrepresentation exception to the waiver of sovereign immunity can apply to claims for personal injuries as well as economic injuries and to claims not involving business transactions.

15. ____: ____: ____. The misrepresentation exception to the waiver of sovereign immunity must be strictly construed in favor of the government.

16. **Tort Claims Act: Immunity: Waiver: Case Disapproved.** *Fuhrman v. State*, 265 Neb. 176, 655 N.W.2d 866 (2003), is disapproved to the extent it holds that a complete failure to convey critical information, without an inference that this was deliberately done, falls outside the misrepresentation exception to the waiver of sovereign immunity.

17. **Tort Claims Act: Pleadings.** A plaintiff cannot circumvent the misrepresentation exception simply through artful pleading of its claims.

Appeal from the District Court for Gage County: Paul W. Korslund, Judge. Affirmed.

Ryan P. Watson and Jeffrey A. Wagner, of Schirber & Wagner, L.L.P., for appellants.

Douglas J. Peterson, Attorney General, David A. Lopez, and Bijan Koohmaraie for appellees.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

A state employee falsely told the parents of a child that K.D.M., a potential adoptee, had no sexual abuse history. Upon placement in their home, K.D.M. sexually assaulted the parents' child. They sued for money damages under the State Tort Claims Act.[1] After a bench trial,[2] the district court found the State of Nebraska and the Nebraska Department of Health and Human Services (collectively the State) immune from suit under the exception for misrepresentation and deceit.[3] The parents appeal, and we affirm. Because the employee consciously deceived the parents, the exception applies. Our decision is driven by the highly deferential standard used to review the district court's factual findings and the strict construction we must give to waivers of sovereign immunity.

## II. BACKGROUND

Because the State prevailed at trial, we summarize the facts in the light most favorable to it.

---

[1] Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014).

[2] See § 81-8,214 (district court, sitting without jury, has exclusive original jurisdiction).

[3] See § 81-8,219(4).

## 1. EVENTS

In May 2010, the parents, Jill B. and Travis B., became interested in adopting K.D.M. On at least three occasions, Jill asked Jodene Gall, a children and family services specialist with the State, whether K.D.M.'s background had anything "sexually" in it and Gall responded "no." Gall told Jill only that there had been concerns about "inappropriate" contact between K.D.M. and his brother. K.D.M. was placed in the parents' home in July.

Gall, however, was aware of allegations that K.D.M. had been sexually abused. She learned this information by reviewing information contained in the computer database and the master case file, which is a paper file.

Approximately 5 months after K.D.M. was placed in the parents' home, the parents learned that K.D.M. had sexually abused their child.

## 2. LAWSUIT

The parents, individually and as parents and next friends of their minor child, brought a negligence claim against the State. They alleged failure to warn or disclose and failure to supervise. The State asserted the affirmative defense of immunity under § 81-8,219(4), claiming that the case constituted a claim arising out of misrepresentation or deceit, because the withholding of information by Gall was intentional.

The State filed a motion for summary judgment, which the district court overruled. The court stated that it was clear Gall intentionally concealed K.D.M.'s sexual history from the parents, but that there was evidence she did not read the reports which detailed the sexual history and was not aware of how serious it was. The court reasoned that it could not conclude Gall's intentional concealment of K.D.M.'s sexual history was the sole proximate cause of damages when there was evidence that the proximate cause was Gall's failure to be fully aware of the file and forensic reports. The matter proceeded to trial.

During the bench trial, Gall testified about her awareness of K.D.M.'s background. When she first spoke with Jill, Gall knew that K.D.M. "had some inappropriate contact" with a relative. Gall believed that she told the parents there had been "inappropriate contact," but she did not believe she elaborated. And Gall testified that she did not know the full extent of K.D.M.'s sexual abuse at that time.

But there was evidence from which the district court could conclude that from the beginning of her contacts with the parents, Gall knew the full extent of K.D.M.'s sexual history. Gall admitted that when K.D.M. was placed with the parents, she was aware of allegations that he had been sexually abused and that he had a history of sexually acting out. She admitted that she was assigned to K.D.M.'s case in 2007 or 2008. She admitted that in 2007, she drafted a "private narrative" section of an adoption form regarding K.D.M. She admitted that the first sentence of the private narrative stated, "'[K.D.M.] would best fit in a family with two parents, preferably no other children.'" She admitted that this opinion "could have been" based on her knowledge of K.D.M.'s sexual history. In an email from Gall to other personnel of the State, Gall recalled the allegations of a particular intake. She admitted at trial that in the email, she was referring to the intake received as exhibit 35. And she admitted that exhibit 35 was the source of her information or knowledge regarding K.D.M.'s sexual history. One of the State's child and family services supervisors explained that the information from this intake form was derived from forensic interviews conducted by a child advocacy center. The supervisor also testified that Gall said "she didn't feel like she would have to call [K.D.M.] a perp for the rest of his life."

### 3. District Court's Judgment

The district court entered judgment in favor of the State. Ultimately, the court reasoned that the State's liability "rises and falls on whether [K.D.M.'s] sexual abuse history was disclosed, not on whether or not the information was available

to [Gall] and whether [Gall] was negligently trained and supervised." The court also stated that "the information was available to [Gall,] and she was not negligently trained and supervised."

The district court made numerous factual findings, and we quote the findings bearing on Gall's intent as follows:

8. [Gall] was actually aware that [K.D.M.'s] background included some instances of sexual abuse and inappropriate sexual contact with a sibling at the time of the [parents'] inquiries.

9. During the preliminary meetings and evaluations, [Gall] also represented to . . . a licensed mental health counselor who was assisting with the placement process[] that [K.D.M.] had no sexual abuse history as either a victim or perpetrator.

10. [Gall] was not authorized with discretion to withhold relevant information concerning the sexual abuse history of [K.D.M.]

11. Even while [Gall] knew that [K.D.M.'s] background included allegations of sexual abuse and inappropriate sexual contact and acting out, and despite her awareness that the [parents] were very concerned about whether [K.D.M.] had any history that included sexual activity, [K.D.M.] was placed in the [parents'] home in 2010.

The district court concluded that the parents presented a case "rooted in and inextricably intertwined with multiple instances of misrepresentation" by Gall. Because the State Tort Claims Act "specifically excepts from its waiver of governmental immunity claims that are based on misrepresentation and deceit," the court dismissed the complaint.

The parents filed a timely appeal, and we granted their petition to bypass review by the Nebraska Court of Appeals.

### III. ASSIGNMENTS OF ERROR

The parents assign four errors, which we have restated and reordered. We first address their assignments that the district

court erred in not applying the law-of-the-case doctrine and in finding the misrepresentation exception had been properly asserted as an affirmative defense. We then consider the heart of the appeal, where they attack the court's determination that the State was immune under the exception for misrepresentation or deceit. Finally, we discuss the assignment of error regarding the court's finding that Gall was not negligently trained and supervised.

## IV. STANDARD OF REVIEW

[1] In actions brought pursuant to the State Tort Claims Act, the factual findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the verdict, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence.[4]

[2] The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.[5]

## V. ANALYSIS

We briefly dispose of two procedural issues.

### 1. Law-of-the-Case Doctrine

[3] The parents argue that the district court erred in failing to apply the law-of-the-case doctrine. The law-of-the-case doctrine reflects the principle that an issue that has been litigated and decided in one stage of a case should not be relitigated at a later stage.[6]

The parents reason that in overruling the State's motion for summary judgment, the district court determined that immunity did not apply. We disagree for two reasons.

---

[4] *Fuhrman v. State*, 265 Neb. 176, 655 N.W.2d 866 (2003).

[5] *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016).

[6] *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016).

[4] First, the parents' premise is wrong. The overruling of a motion for summary judgment does not decide any issue of fact or proposition of law affecting the subject matter of the litigation, but merely indicates that the court was not convinced by the record that there was not a genuine issue as to any material fact or that the party offering the motion was entitled to judgment as a matter of law.[7] Here, the district court did not decide that immunity did not apply, it merely decided that there was a genuine issue of fact for trial.

[5,6] Second, the law-of-the-case doctrine requires a final order. A party is not bound by a court's findings in an order that it was not required to appeal.[8] But here, neither party was permitted, much less required, to appeal. A denial of a motion for summary judgment is an interlocutory order, not a final order, and therefore not appealable.[9] Thus, the law-of-the-case doctrine did not preclude the district court from addressing immunity at trial.

### 2. Affirmative Defense Asserted

[7,8] The exceptions found in § 81-8,219 to the general waiver of tort immunity are matters of defense which must be pled and proved by the State.[10] The parents contend that the State failed to properly plead the misrepresentation exception as an affirmative defense. But we have recognized that the federal rules of pleading, which Nebraska has generally adopted, were designed to liberalize pleading requirements.[11] The key to determining the sufficiency of pleading an affirmative defense is whether it gives the plaintiff fair notice of the defense.[12]

---

[7] *Big River Constr. Co. v. L & H Properties*, 268 Neb. 207, 681 N.W.2d 751 (2004).

[8] *In re 2007 Appropriations of Niobrara River Waters*, 283 Neb. 629, 820 N.W.2d 44 (2012).

[9] *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 849 N.W.2d 523 (2014).

[10] See *Sherrod v. State*, 251 Neb. 355, 557 N.W.2d 634 (1997).

[11] *SFI Ltd. Partnership 8 v. Carroll*, 288 Neb. 698, 851 N.W.2d 82 (2014).

[12] *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014).

Although the State's operative answer was not perfect, the parents were afforded fair notice of the nature of the defense asserted by the State. Despite references to the "Amended Complaint" throughout the State's answer, the answer was clearly filed in response to the parents' second amended complaint. Indeed, the State's pleading was titled "Defendant's Answer to Second Amended Complaint." The parents also point out that the answer referred to intentional conduct and that their operative complaint alleged only negligent conduct. But the answer, by referring to "misrepresentation or deceit" and to § 81-8,219(4), clearly placed the parents on notice of the State's intent to raise sovereign immunity as a defense. We reject their hypertechnical attempt to parse the State's pleading.

[9] Moreover, the district court's pretrial order cured any question whether the defense was raised. The issues set out in a pretrial order supplant those raised in the pleadings.[13] The court incorporated into its pretrial order an issue framed in the State's pretrial conference statement: "Whether the *intentional torts exception* to the Nebraska State Tort Claims Act operates as a complete bar to [the parents'] recovery from the State." (Emphasis supplied.) The State characterizes this as "shorthand"[14] and correctly notes that we have used this terminology regarding § 81-8,219(4).[15] The parents do not argue that they were misled or surprised by the State's arguments regarding misrepresentation or deceit. This assignment of error lacks merit.

### 3. Misrepresentation Exception

The parents' principal assignment of error asserts that the district court erred in finding their claim fell within the "[m]isrepresentation [e]xception"[16] of the State Tort Claims

---

[13] *Cotton v. Ostroski*, 250 Neb. 911, 554 N.W.2d 130 (1996).

[14] Brief for appellees at 12.

[15] See *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005).

[16] Brief for appellants at 20.

Act. But the parties argue both misrepresentation and deceit. Both terms are specified in § 81-8,219(4).

Before recalling the historical development and basic principles of sovereign immunity and its waiver, a simple illustration is helpful. Imagine two automobiles being operated by employees in the course of performing tasks for their respective employers. If A, an employee of XYZ Corp., becomes distracted and negligently causes injury to another person, XYZ Corp. is liable. If B, an employee of the State, does so, the State is liable. But if A or B becomes enraged at another driver and intentionally collides with the other vehicle, thereby injuring the other driver (a battery), the results differ. XYZ Corp. would be liable for A's intentional act,[17] but the State would be immune from suit for B's similar act. Although this seems counterintuitive, there is a rationale supporting the distinction.

### (a) Sovereign Immunity Prior to State Tort Claims Act

It had been long "laid down as a universal rule that a state is not liable to a person injured by the negligence of its employees, unless there is a statute or constitutional provision permitting recovery."[18] We explained that the constitutional provision[19] permitting the State to be sued is not self-executing and requires legislative action to make it effective.[20]

The rule of sovereign immunity has been characterized as "'an ancient rule inherited from the days of absolute monarchy'"[21] or, less pejoratively, as an inheritance of 18th-century English law.[22] It rests upon a broad doctrine recognizing the right of

---

[17] See *Rich v. Dugan*, 135 Neb. 63, 280 N.W. 225 (1938).

[18] *Shear v. State*, 117 Neb. 865, 866, 223 N.W. 130, 130 (1929).

[19] Neb. Const. art. V, § 22.

[20] See *Shear v. State, supra* note 18.

[21] See *Stadler v. Curtis Gas, Inc.*, 182 Neb. 6, 9, 151 N.W.2d 915, 918 (1967) (Newton, J., dissenting; White, C.J., and Carter, J., concurring in dissent).

[22] See Comment, *The Federal Tort Claims Act*, 56 Yale L.J. 534 (1947).

sovereign authority to be free of such liability except to the extent that it is waived or abrogated by the Legislature.[23] The doctrine predated our state constitution, which was adopted with this rule in mind.[24]

Although the rule had been challenged for decades,[25] our 1967 decision[26] by a divided court prompted legislative action. As a dissenting judge observed pungently, "logic dictates that a person run over by a state-owned truck should have the same right to recover as one run over by a privately owned truck."[27] Two members of the majority concurred and remarked that the "implications [of the majority opinion] suggest the desirability of legislative action."[28]

### (b) State Tort Claims Act

In 1969, the Legislature responded to the call for action.[29] But it did not abolish the rule of sovereign immunity. Instead, it used the Federal Tort Claims Act (FTCA)[30] as a model.

[10] Through the State Tort Claims Act, the Legislature has waived the State's immunity with respect to certain, but not all, types of tort actions.[31] As pertinent here, the act waives the

---

[23] See *Stadler v. Curtis Gas, Inc., supra* note 21 (Carter, J., dissenting; White, C.J., and Newton, J., join).

[24] See *id.* (Newton, J., dissenting; White, C.J., and Carter, J., concurring in dissent).

[25] See *id.* (McCown, J., concurring; Spencer, J., joins).

[26] See *id.*

[27] *Id.* at 9, 151 N.W.2d at 918 (Newton, J., dissenting; White, C.J., and Carter, J., concurring in dissent).

[28] *Id.* at 22, 151 N.W.2d at 924 (McCown, J., concurring; Spencer, J., joins).

[29] See 1969 Neb. Laws, L.B. 154. See, also, Minutes of Committee on Judiciary, L.B. 154, 80th Leg., 1st Sess. (Feb. 3, 1969); Committee Statement, L.B. 154, Judiciary Committee, 80th Leg., 1st Sess. (Feb. 6, 1969); Floor Debate, L.B. 154, 80th Leg., 1st Sess. 841 (Mar. 26, 1969).

[30] 28 U.S.C. §§ 1346(b) and 2671 to 2680 (1964 & Supp. III).

[31] See, *Lamb v. Fraternal Order of Police Lodge No. 36*, 293 Neb. 138, 876 N.W.2d 388 (2016); *Johnson v. State, supra* note 15.

State's sovereign immunity for tort claims against the State on account of personal injury caused by the negligent or wrongful act or omission of any employee of the State, while acting within the scope of his or her office or employment, under circumstances in which the State, if a private person, would be liable to the claimant for such injury.[32]

[11] The Legislature included within the act specific exceptions to the waiver of sovereign immunity. Under the intentional torts exception, sovereign immunity is not waived for claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."[33] Our attention focuses on misrepresentation and deceit.

### (c) Strict Construction

[12,13] It is well settled that statutes that purport to waive the protection of sovereign immunity of the State or its subdivisions are strictly construed in favor of the sovereign and against the waiver. A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.[34] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[35]

The principle of strict construction predated the State Tort Claims Act and has been consistently followed after its adoption. We had long said that statutes authorizing suit against

[32] See § 81-8,210(4).

[33] § 81-8,219(4).

[34] *Lamb v. Fraternal Order of Police Lodge No. 36, supra* note 31.

[35] *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016).

the State are to be strictly construed, since they are in derogation of the State's sovereignty.[36] Following adoption of the State Tort Claims Act, we emphasized that statutes in derogation of sovereignty should be strictly construed in favor of the State, so that its sovereignty may be upheld and not narrowed or destroyed, and should not be permitted to divest the State or its government of any of its prerogatives, rights, or remedies, unless the intention of the Legislature to effect this object is clearly expressed.[37] We also said that because the State has given only conditional consent to be sued and there is no absolute waiver of immunity by the State, requirements of the State Tort Claims Act must be followed strictly.[38] Our most recent pronouncements uphold these principles.[39] Because the rationale for the intentional torts exception, including the exceptions for misrepresentation and deceit, has not always been clearly expressed, the rule of strict construction becomes critically important.

### (d) Rationale of FTCA

We have recognized that Nebraska's State Tort Claims Act is patterned after the FTCA.[40] The FTCA contains an intentional

---

[36] See *Anstine v. State*, 137 Neb. 148, 288 N.W. 525 (1939), *overruled on other grounds, Beatrice Manor v. Department of Health*, 219 Neb. 141, 362 N.W.2d 45 (1985), and *Pointer v. State*, 219 Neb. 315, 363 N.W.2d 164 (1985).

[37] *Catania v. The University of Nebraska*, 204 Neb. 304, 282 N.W.2d 27 (1979), *overruled on other grounds, Blitzkie v. State*, 228 Neb. 409, 422 N.W.2d 773 (1988).

[38] *Wickersham v. State*, 218 Neb. 175, 354 N.W.2d 134 (1984), *disapproved on other grounds, D.K. Buskirk & Sons v. State*, 252 Neb. 84, 560 N.W.2d 462 (1997).

[39] See, e.g., *Dean v. State*, 288 Neb. 530, 849 N.W.2d 138 (2014); *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013); *Cotton v. State*, 281 Neb. 789, 810 N.W.2d 132 (2011); *Johnson v. State, supra* note 15.

[40] *Johnson v. State, supra* note 15.

torts exception.[41] Prior to a 1974 amendment[42] not relevant here, the language was identical.

A majority of the U.S. Supreme Court has not spoken to the rationale underlying the intentional torts exception, but a plurality has touched on it. And several commentators and lower federal courts have spoken more directly. We summarize them chronologically to illustrate the rationale's development.

The first comment[43] came from the academy, soon after the FTCA was adopted. Referring to all of the exceptions, including § 2680(h), it argued that because the FTCA was "in itself a denial of the validity of conceptualistic sovereign immunity," the exceptions must seek "justification in some practical necessity."[44] Turning to § 2680(h), its rationale was found in committee hearings of an earlier act and was the "difficulty of defending such suits and the probability of judgments against the Government in amounts out of proportion to the damages actually suffered by claimants."[45] The article recognized that "this sweeping exception imposes a hardship upon claimants and leaves open one fruitful source of private claim bills."[46] In other words, the only remedy in that situation was in Congress and not in the courts.

In a 1954 decision regarding the "assault" and "battery" parts of the exception, the Second Circuit posited that "high standards of public service would be promoted by government employees knowing that they could not engage in such lawless activities at government expense."[47] Alternatively, the court suggested that the excepted activities were viewed as

---

[41] See 28 U.S.C. § 2680(h) (2012).

[42] See Pub. L. 93-253, § 2, 88 Stat. 50.

[43] See Comment, *supra* note 22.

[44] *Id.* at 543.

[45] *Id.* at 547.

[46] *Id.*

[47] *Panella v. United States*, 216 F.2d 622, 625 (1954).

"practically, even though not legally, speaking [as] outside the scope of a government employee's proper official functions, or in any event unusually difficult for the Government to defend against."[48] Citing to the earlier hearings noted from what the court described as a "meagre legislative history,"[49] the court quoted a Department of Justice representative's testimony that these were "'torts which would be difficult to make a defense against, and which are easily exaggerated. For that reason it seemed to those who framed this bill that it would be safe to exclude those types of torts, and those should be settled on the basis of private acts.'"[50]

The view from the academy in 1957 recognized that these torts were "not actionable under the [FTCA],"[51] and called for Congress to reassess the preservation of this immunity, opining that "the desirability of compensation seems to outweigh the fear of excessive damages."[52] But Congress has not reassessed the exception, except for the 1974 amendment having no application here. And when our Legislature adopted the State Tort Claims Act, it did not vary from the exceptions then existing in the FTCA.

Addressing the assault and battery components of the exception in 1985, a plurality of the U.S. Supreme Court explained that "Congress passed the [FTCA] on the straightforward assurance that the United States would not be financially responsible for the assaults and batteries of its employees."[53]

Two later contributions from the academy provide some guidance. A 2003 article concedes that the intentional torts

---

[48] *Id.*

[49] *Id.*

[50] *Id.* at 626.

[51] *Developments in the Law - Remedies Against the United States and Its Officials*, 70 Harv. L. Rev. 827, 891 (1957).

[52] *Id.*

[53] *United States v. Shearer*, 473 U.S. 52, 55, 105 S. Ct. 3039, 87 L. Ed. 2d 38 (1985).

exception was "intended to shield the government from unwieldy claims founded on intentional torts" and that "Congress' intent with regard to intentional torts proximately caused by governmental negligence largely remains a mystery."[54] The most recent article explains that the FTCA's exceptions "underscore the principle that the law does not provide a remedy for every wrong—particularly where the government is concerned."[55] According to the author:

> The FTCA was enacted as one part of a broader legislative "housekeeping" measure—the Legislative Reorganization Act of 1946—whereby Congress removed from itself (or at least greatly reduced) certain time-consuming administrative responsibilities. . . . One long-standing Congressional duty alleviated by the Reorganization Act was the consideration of "private bills," which until that point had been essentially the only way for injured citizens to recover . . . for tortious conduct by government employees . . . .[56]

The author argues that by not using the term "intentional torts," not including all intentional torts in the list of excluded causes of action, and excluding some torts that courts have held need not always be intentional, Congress "made clear its intent to exclude only a subset of intentional torts."[57] Addressing Congress' rationale, the author reprises one, that "exposing the public fisc to potential liability . . . would be 'dangerous,' based on the notion that these torts are both easy for plaintiffs to exaggerate and difficult to defend against."[58]

---

[54] Rebecca L. Andrews, *So the Army Hired an Ax-Murderer: The Assault and Battery Exception to the Federal Tort Claims Act Does Not Bar Suits for Negligent Hiring, Retention and Supervision*, 78 Wash. L. Rev. 161, 170 (2003).

[55] David W. Fuller, *Intentional Torts and Other Exceptions to the Federal Tort Claims Act*, 8 U. St. Thomas L.J. 375, 377 (2011).

[56] *Id.* at 378.

[57] *Id.* at 379.

[58] *Id.* at 384.

But the author also discerns two new rationales. He suggests that Congress "took a 'wait and see' or 'step by step' approach."[59] Finally, a "theme that emerges is the assumption that [excluded claims] could and would be 'settled on the basis of private acts.'"[60]

From this exposition, a clear rationale emerges. Congress was willing to waive sovereign immunity where its employees acted negligently but not where they acted deliberately or recklessly—at least as to the specified torts. This is reminiscent of the intentional acts exclusion under a standard liability policy: an insurer is willing to insure against damages incurred in an accident, but it is against public policy to insure against liability for intentional actions.[61] Declining to waive immunity for the specified intentional torts promotes high standards of performance by a sovereign's employees and avoids "dangerous" exposure of the public treasury. This approach rejects relying solely on the claimant's perspective (having been run over by a truck). We have examined the legislative history of the State Tort Claims Act and find nothing addressing the exceptions to the general waiver of sovereign immunity.[62] Evidently, the Legislature was satisfied to rely upon Congress' example.

Because waiver of sovereign immunity is a matter addressed solely to the Legislature and we are required to strictly construe the statute against a waiver, we would be acting beyond our power to do otherwise. Thus, in considering the arguments advanced by the parents, we must determine only whether

---

[59] *Id.*

[60] *Id.* at 385.

[61] See *Austin v. State Farm Mut. Auto. Ins. Co.*, 261 Neb. 697, 625 N.W.2d 213 (2001).

[62] See, Introducer's Statement of Purpose, L.B. 154, Judiciary Committee, 80th Leg., 1st Sess. (Feb. 3, 1969); Minutes of Committee on Judiciary, L.B. 154, 80th Leg., 1st Sess. (Feb. 3, 1969); Committee Statement, L.B. 154, Judiciary Committee, 80th Leg., 1st Sess. (Feb. 6, 1969); Floor Debate, L.B. 154, 80th Leg., 1st Sess. 840-43 (Mar. 26, 1969).

immunity has clearly been waived. If there is any doubt, the State must prevail.

### (e) Misrepresentation in
### Law of Torts

We concede that misrepresentation permeates the law of torts. It can be a separate tort or a method of accomplishing other torts.

Recognizing that misrepresentation can be a broad topic, a treatise limited the scope of its discussion. Its chapter on misrepresentation related to "the extent to which tort actions are available to protect intangible economic interests of those who are induced by mistake to enter into bargaining transactions as a consequence of a fraud of misrepresentation of others."[63] The treatise touched on the narrower tort of deceit:

> The tort action of deceit is sometimes used as the name of the tort for covering all kinds of actions now available for all kinds of so-called actionable misrepresentations or nondisclosure. Sometimes that term is more narrowly used to cover the tort remedy that was available under the common law and prior to recent developments. But the more important question relates to the extent of liability on any theory for misrepresentations and nondisclosures. The reasons for the separate development of this action, and for its peculiar limitations, are in part historical, and in part connected with the fact that *in the great majority of the cases which have come before the courts the misrepresentations have been made in the course of a bargaining transaction between the parties. Consequently, the action has been colored to a considerable extent by the ethics of bargaining between distrustful adversaries. Its separate recognition has been confined in practice very largely to the invasion of interests of a financial or commercial character,*

---

[63] See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 105 at 726 (5th ed. 1984).

*in the course of business dealings. There is no essential
reason to prevent a deceit action from being maintained,
for intentional misstatements at least, where other types
of interests are invaded; and there are a few cases in
which it has been held to lie for personal injuries,* for
tricking the plaintiff into an invalid marriage or mar-
riage with one who is physically unfit, or for inducing
the plaintiff to leave a husband, or to incur criminal
penalties. In general, however, other theories of action
have been sufficient to deal with non-pecuniary damage,
and the somewhat narrower theory of deceit is not called
into question.[64]

Case law has made clear that the misrepresentation excep-
tion applies to negligent misrepresentation as well as will-
ful misrepresentation. Two U.S. Supreme Court cases, *United
States v. Neustadt*[65] and *Block v. Neal*,[66] so held under the
FTCA. The *Neustadt* Court reasoned:

To say . . . that a claim arises out of "negligence,"
rather than "misrepresentation," when the loss suffered
by the injured party is caused by the breach of a "specific
duty" owed by the Government to him, *i. e.*, the duty to
use due care in obtaining and communicating information
upon which that party may reasonably be expected to rely
in the conduct of his economic affairs, is only to state
the traditional and commonly understood legal definition
of the tort of "negligent misrepresentation," as is clearly,
if not conclusively, shown by the authorities set forth in
the margin, and which there is every reason to believe
Congress had in mind when it placed the word "mis-
representation" before the word "deceit" in § 2680(h).
As the Second Circuit observed . . . , "deceit" alone

---

[64] *Id.* (emphasis supplied).

[65] *United States v. Neustadt*, 366 U.S. 696, 81 S. Ct. 1294, 6 L. Ed. 2d 614
(1961).

[66] *Block v. Neal*, 460 U.S. 289, 103 S. Ct. 1089, 75 L. Ed. 2d 67 (1983).

would have been sufficient had Congress intended only to except deliberately false representations. Certainly there is no warrant for assuming that Congress was unaware of established tort definitions when it enacted the Tort Claims Act in 1946, after spending "some twenty-eight years of congressional drafting and redrafting, amendment and counter-amendment." . . . Moreover, as we have said in considering other aspects of the Act: "There is nothing in the Tort Claims Act which shows that Congress intended to draw distinctions so finespun and capricious as to be almost incapable of being held in the mind for adequate formulation."[67]

The *Block* Court declared that "the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies."[68]

We have similarly held in a case construing the misrepresentation exception under the Political Subdivisions Tort Claims Act.[69] In *Stonacek v. City of Lincoln*, homeowners built in an area near a tributary of a stream. After they experienced flooding in their new homes, they sued the city. Among other things, the complaint alleged that the city was negligent in failing to advise the homeowners of the Department of Natural Resources' study which showed the flood elevation of the property was different from the elevation disclosed by the city. The city alleged that this was a claim for misrepresentation and that it had sovereign immunity because the Political Subdivisions Tort Claims Act excepted such a claim from the waiver of immunity.[70] We employed the reasoning from *Neustadt* and explained:

---

[67] *United States v. Neustadt, supra* note 65, 366 U.S. at 706-08 (citations omitted).

[68] *Block v. Neal, supra* note 66, 460 U.S. at 296.

[69] See *Stonacek v. City of Lincoln*, 279 Neb. 869, 782 N.W.2d 900 (2010).

[70] See Neb. Rev. Stat. § 13-910(7) (Reissue 2012).

In addressing the claims in *Neustadt*, the U.S. Supreme Court observed that the federal misrepresentation exception insulates the government against liability for conveying false or inaccurate information, *whether that information was conveyed based on willfull or negligent misrepresentation.* In determining that the [FTCA] excepts acts of misrepresentation, the Supreme Court defined negligent misrepresentation as the breach of "the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs." *. . . It has been observed that the "prophylaxis of the misrepresentation exception extends to failures of communication."*[71]

We determined that the homeowners' claim was based on misrepresentation. We noted that the homeowners alleged the city had "failed to properly advise them of information."[72] But we held that the gravamen of the claim "involves the improper communicating of the flood plan information" and that, thus, "the claim [was] based on a misrepresentation."[73] Because the claim fell within the misrepresentation exception, we concluded that the claim was barred because sovereign immunity was not waived.

The reasoning of *Stonacek* is equally applicable to a claim implicating the misrepresentation exception under the State Tort Claims Act. The misrepresentation exception under § 13-910(7) is identical to the misrepresentation exception contained in § 81-8,219(4).

Having provided a brief background concerning misrepresentation, we turn to the parents' arguments.

---

[71] *Stonacek v. City of Lincoln, supra* note 69, 279 Neb. at 883-84, 782 N.W.2d at 911 (emphasis supplied).

[72] *Id.* at 885, 782 N.W.2d at 912.

[73] *Id.*

### (f) Parents' Arguments

The parents assert that the district court erred in applying the misrepresentation exception for several reasons. We address each in turn.

### (i) Application to Misrepresentation Involving Physical Injury

First, the parents claim that the traditional tort of misrepresentation requires some form of pecuniary loss and that the exception was designed to cover only that form of tort. The parents argue that because they did not plead any element of pecuniary loss, it was error to find their claim barred under the exception for misrepresentation or deceit. In essence, their argument is that Nebraska would not recognize a cause of action in tort for a conscious misrepresentation involving a risk of physical harm. We disagree.

Whether the misrepresentation exception applies where there is no commercial misrepresentation and the loss suffered is physical harm is a question of first impression in Nebraska. Our previous cases dealing with the exception all involved compensation for an economic loss.[74] In *Tolliver v. Visiting Nurse Assn.*,[75] we stated: "[T]he distinct tort of fraud or misrepresentation is *generally* an economic tort against financial interests, asserted to recover pecuniary loss. One who makes a fraudulent or negligent misrepresentation in a business transaction is *normally* liable only for the recipient's pecuniary losses." *Tolliver* involved a claim for nonpecuniary and noneconomic loss (pain and suffering), but it did not concern the misrepresentation exception.

---

[74] See, *Zawaideh v. Nebraska Dept. of Health & Human Servs., supra* note 39; *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010); *Stonacek v. City of Lincoln, supra* note 69; *Wickersham v. State, supra* note 38.

[75] *Tolliver v. Visiting Nurse Assn.*, 278 Neb. 532, 539, 771 N.W.2d 908, 914-15 (2009) (emphasis supplied).

*Tolliver* does not foreclose the possibility of noneconomic damages in a tort action for misrepresentation. We note that our language, quoted above with our emphasis supplied, spoke in terms of generalities and not absolutes. And we provided two reasons why we did not believe permitting damages for pain and suffering was appropriate under a misrepresentation theory in that case. First, we recognized that all of the damages that the plaintiffs sought under their misrepresentation claims were alleged under its negligence claim. We cited a treatise to the effect that it was usually unnecessary to resort to a theory of deceit, because other theories of action were sufficient to deal with nonpecuniary loss.[76] Second, we stated that a party may not have double recovery for a single injury. Although the plaintiffs did not specifically allege pain and suffering damages for their misrepresentation claims, we stated that such damages would have duplicated the pain and suffering damages claimed under the negligence cause of action. Thus, under the facts of *Tolliver*, it was not necessary for us to decide whether noneconomic damages would be available for a misrepresentation claim.

In *Tolliver*, we focused on two sections of the Restatement.[77] Section 525 involves fraudulent misrepresentation that causes economic harm, and it is found in a chapter of the Restatement "concerned only with the liability for pecuniary loss resulting from misrepresentation or nondisclosure."[78] But the Restatement sets forth another type of fraudulent misrepresentation—one that causes physical harm.[79] *Tolliver* did not mention § 310. We will discuss § 310 in more detail later in the analysis.

Because, as we have already explained, our State Tort Claims Act was modeled on the FTCA, we look to federal law

---

[76] See Keeton et al., *supra* note 63.

[77] Restatement (Second) of Torts §§ 525 and 557A (1977).

[78] *Id.*, ch. 22, scope note at 55.

[79] See Restatement (Second) of Torts § 310 (1965).

for guidance. The federal courts, however, are not uniform in their application of the misrepresentation exception.

The two key U.S. Supreme Court cases dealing with the misrepresentation exception to the FTCA do not directly answer the question. Both *Neustadt*[80] and *Block*[81] involved economic damages in connection with the purchase of residential property.

Footnotes contained in the *Neustadt* and *Block* opinions have perhaps created confusion about the applicability of the misrepresentation exception to noncommercial situations. A footnote in *Neustadt* stated:

> Our conclusion neither conflicts with nor impairs the authority of *Indian Towing Co. v. United States*, 350 U. S. 61[, 76 S. Ct. 122, 100 L. Ed. 48 (1955)], which held cognizable a Torts Act claim for property damages suffered when a vessel ran aground as a result of the Coast Guard's allegedly negligent failure to maintain the beacon lamp in a lighthouse. Such a claim does not "arise out of . . . misrepresentation," any more than does one based upon a motor vehicle operator's negligence in giving a misleading turn signal. As Dean Prosser has observed, many familiar forms of negligent conduct may be said to involve an element of "misrepresentation," in the generic sense of that word, but "(s)o far as misrepresentation has been treated as giving rise in and of itself to a distinct cause of action in tort, it has been identified with the common law action of deceit," and has been confined "very largely to the invasion of interests of a financial or commercial character, in the course of business dealings."[82]

The *Block* Court, in discussing the above footnote from *Neustadt*, said the following in a footnote:

---

[80] *United States v. Neustadt, supra* note 65.

[81] *Block v. Neal, supra* note 66.

[82] *United States v. Neustadt, supra* note 65, 366 U.S. at 711 n.26.

The Court distinguished negligent misrepresentation from the "many familiar forms of negligent misconduct [which] may be said to involve an element of 'misrepresentation,' [only] in the generic sense of that word." . . . The "misrepresentation" exception applies only when the action itself falls within the commonly understood definition of a misrepresentation claim, which "'has been identified with the common law action of deceit,' and has been confined 'very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.'" . . . Thus, the claim in *Indian Towing Co. v. United States*, 350 U. S. 61[, 76 S. Ct. 122, 100 L. Ed. 48] (1955), for damages to a vessel which ran aground due to the Coast Guard's alleged negligence in maintaining a lighthouse, did not "aris[e] out of . . . misrepresentation" within the meaning of § 2680(h).[83]

These footnotes referencing *Indian Towing Co. v. United States*[84] may have been an attempt to distinguish misrepresentation from operational negligence.

The lower federal courts have inconsistent results.

Two federal circuit courts have limited application of the misrepresentation exception to pecuniary or commercial misrepresentations. The 10th Circuit concluded that the misrepresentation exception to the FTCA did not apply to bar emotional distress claims.[85] The court observed that pecuniary loss, which it called an "essential component[] of negligent misrepresentation,"[86] was not present. The 11th Circuit determined that the misrepresentation exception applied in a case where the injury suffered "was the loss of . . . investment

---

[83] *Block v. Neal, supra* note 66, 460 U.S. at 296 n.5.

[84] *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S. Ct. 122, 100 L. Ed. 48 (1955).

[85] *Estate of Trentadue ex rel. Aguilar v. U.S.*, 397 F.3d 840 (10th Cir. 2005).

[86] *Id.* at 855.

money, which is an economic injury arising from a commercial decision."[87] And some federal district courts noted the presence or absence of a commercial misrepresentation in either applying or declining to apply the exception.[88]

But two other circuit courts have contradictory aspects. In *Kohn v. United States*,[89] an action involving the claims of parents of a soldier who was killed by a fellow soldier, the Second Circuit briefly addressed the misrepresentation and deceit exceptions. The court stated: "[T]hese exceptions have generally been applied only to actions for damages due to commercial decisions that were predicated on incorrect or incomplete information. . . . Because the context here is hardly commercial in nature, we do not believe that appellants' claims are necessarily barred as an action for misrepresentation or deceit."[90] But the Second Circuit later observed a limitation of *Kohn*: "*Kohn* stopped well short of holding that the United States had waived sovereign immunity for non-commercial torts arising from its suppression of information or its release of information that was fraudulent. Indeed, the panel in *Kohn* had no occasion to decide that question,"[91] because the Second Circuit reversed and remanded to permit the appellants to amend their remaining cause of action to include new allegations. The Ninth Circuit first stated that

---

[87] *Zelaya v. U.S.*, 781 F.3d 1315, 1338 (11th Cir. 2015).

[88] See, e.g., *Ard v. F.D.I.C.*, 770 F. Supp. 2d 1029 (C.D. Cal. 2011) (stating government is not liable for injuries resulting from commercial decisions made in reliance on government misrepresentations); *Mill Creek Group, Inc. v. F.D.I.C.*, 136 F. Supp. 2d 36 (D. Conn. 2001) (observing that plaintiff sought to redress economic injury incurred in commercial setting); *Salter v. U.S.*, 853 F. Supp. 389, 394 (M.D. Ala. 1994) (stating exception did not apply because plaintiff's claim "is for personal injury, not for injury of a commercial or financial nature").

[89] *Kohn v. United States*, 680 F.2d 922 (2d Cir. 1982).

[90] *Id.* at 926.

[91] See *Cabiri v. Government of Republic of Ghana*, 165 F.3d 193, 201 (2d Cir. 1999).

"the misrepresentation exception precludes liability where the plaintiff suffers economic loss as a result of a commercial decision which was based on a misrepresentation."[92] But it later stated, without any analysis, that the misrepresentation exception barred a claim by a juvenile who was sexually abused by a felon working at a foster home.[93]

Several federal district courts have explicitly stated that the exception is not limited to financial or commercial loss.[94] In *Najbar v. U.S.*,[95] a Minnesota federal court addressed the footnote from *Block* that we quoted above:

> Taken out of context, the quoted portions of *Block* and *Neustadt* could be read to support [plaintiff's] assertion that, because she does not seek to recover for commercial injury, her claim is not barred by the FTCA's misrepresentation exception even if it is a claim for misrepresentation. But the context makes clear that *Block* and *Neustadt* were simply describing, in elliptical fashion, the most-common types of misrepresentation claims. Indeed, the very language from Prosser's treatise quoted in *Neustadt* and then in *Block* spoke of misrepresentation claims being "'very largely'"—but not exclusively—limited to claims seeking recovery for commercial injury. . . . And *Block* itself said that "the essence of an action for misrepresentation,

---

[92] *Green v. United States*, 629 F.2d 581, 584 (9th Cir. 1980). See, also, *Mt. Homes, Inc. v. U.S.*, 912 F.2d 352, 356 (9th Cir. 1990) (stating conclusion that misrepresentation exception precluded recovery was "buttressed by the fact that [plaintiff] suffered an economic injury in a commercial setting").

[93] See *Lawrence v. U.S.*, 340 F.3d 952 (9th Cir. 2003).

[94] See, e.g., *Najbar v. U.S.*, 723 F. Supp. 2d 1132 (D. Minn. 2010), *affirmed on other grounds* 649 F.3d 868 (8th Cir. 2011); *Russ v. U.S.*, 129 F. Supp. 2d 905 (M.D.N.C. 2001); *Mullens v. U.S.*, 785 F. Supp. 216 (D. Maine 1992); *Wells v. U.S.*, 655 F. Supp. 715 (D.D.C. 1987); *Diaz Castro v. United States*, 451 F. Supp. 959 (D. Puerto Rico 1978); *Lloyd v. Cessna Aircraft Co.*, 429 F. Supp. 181 (E.D. Tenn. 1977).

[95] *Najbar v. U.S., supra* note 94, 723 F. Supp. 2d at 1137.

whether negligent or intentional, is the communication of misinformation on which the recipient relies." . . . This formulation of the "essence" of misrepresentation is not limited to commercial misrepresentations. Finally, neither *Neustadt* nor *Block* involved a claim for noncommercial misrepresentation, and thus neither case could have held that such claims were outside the scope of the FTCA's misrepresentation exception.

The Minnesota federal court remarked that "Congress used the word 'misrepresentation,' and that word is broad enough to reach all types of claims for misrepresentation, whether those claims seek recovery for commercial injury, physical injury, or emotional injury."[96] A different court looked to a few cases that had applied the misrepresentation exception and concluded that "[c]learly the exception is just as applicable to actions involving personal injury and wrongful death as it is to those involving only financial or commercial loss, absent any indication that Congress intended such exception to apply only to the latter type of lawsuits."[97] Another court rejected the plaintiff's argument that the misrepresentation exception had been limited to transactions of a commercial nature, observing that the *Neustadt* Court relied upon cases which were noncommercial.[98]

Some federal courts have applied the misrepresentation exception to claims involving nonpecuniary losses without elaboration. At least one federal court excluded a claim seeking damages for wrongful death.[99] We observe that in some cases in which claims for personal injuries were barred, the claims appeared to arise out of a commercial

---

[96] *Id.*

[97] *Diaz Castro v. United States, supra* note 94, 451 F. Supp. at 963.

[98] *Vaughn v. United States*, 259 F. Supp. 286 (N.D. Miss. 1966).

[99] See, e.g., *Bartie v. United States*, 216 F. Supp. 10 (W.D. La. 1963) (alleging government failed to give adequate warning concerning hurricane).

transaction.[100] And we note that the Seventh Circuit has stated that "[t]he test is not whether the injury was economic, but whether it resulted from a commercial decision based on a governmental misrepresentation."[101]

Decisions from courts of two states deserve attention. First, California courts have found that its statutes[102] do not insulate the government from liability when the suit did not involve commercial misrepresentations. In *Johnson v. State of California*,[103] foster parents sued after a child, who the state was aware had homicidal tendencies, was placed in their home without notice of any dangerous propensities. The court reasoned that "it would be at best anomalous, and at worst an inversion of accepted priorities, to allow the state immunity only upon a finding that the parole officer actually lied to plaintiff."[104]

But this decision provides little guidance for several reasons, in increasing order of importance. Most of the decision focused on the discretionary function exception. California's statute is considerably different from ours. California expansively shields state employees from individual liability, but

---

[100] See, e.g., *Schneider v. USA*, 936 F.2d 956 (7th Cir. 1991) (purchasers of defective prefabricated homes sued for personal injuries and property damages); *Hamre v. United States*, 799 F.2d 455 (8th Cir. 1986) (purchasers of home discovered to be infested with bats sued for personal injuries and property damages).

[101] *Preston v. United States*, 596 F.2d 232, 239 (7th Cir. 1979).

[102] See Cal. Gov't Code §§ 818.8 ("public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional") and 822.2 ("public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice") (West 2012).

[103] *Johnson v. State of California*, 69 Cal. 2d 782, 447 P.2d 352, 73 Cal. Rptr. 240 (1968).

[104] *Id.* at 800, 447 P.2d at 364, 73 Cal. Rptr. at 252.

our statute does so only where suit *is* permitted under the State Tort Claims Act.[105] The California court relied heavily on state legislative history demonstrating a concern with misrepresentation in the area of state contracts. But, most important, the court does not follow a rule construing waivers of sovereign immunity strictly against waiver and in favor of the sovereign. The phrase "strict construction" does not appear anywhere in the decision. The court's concern with an "inversion of accepted priorities" attacks the central premise of an intentional torts exception. From a moral standpoint, intentional torts *are* more egregious than mere negligence. But the Legislature, and not the courts, is empowered to determine where immunity should be waived. We might not agree with the rationale for its distinction, but we must not usurp its role in drawing the line between liability and immunity. Because a California Court of Appeals decision[106] is driven by the *Johnson* opinion, the same reasons dictate giving it little attention.

A decision of the Supreme Court of Alaska[107] deserves more attention, because Alaska's statute, like ours, was modeled on the FTCA. In the Alaska case, parents sued the state, alleging negligent failure to disclose information that would have alerted them to the risks of accepting into their home a foster child who ultimately physically and sexually assaulted their two children. The Supreme Court of Alaska reversed a summary judgment in favor of the state.

But despite the similarity of statutes, we do not find the Alaska decision to be persuasive. Most of the decision focused on foreseeability in the context of summary judgment. The court's examination of federal cases was limited to the *Neustadt* footnote.[108] The court relied heavily upon

---

[105] See § 81-8,217.

[106] *Michael J. v. L.A. Cty. D. of Adoptions*, 201 Cal. App. 3d 859, 247 Cal. Rptr. 504 (1988).

[107] *P.G. v. DFYS*, 4 P.3d 326 (Alaska 2000).

[108] *United States v. Neustadt, supra* note 65.

the California court's reasoning in *Johnson*. Likewise, the Alaska court does not discuss "strict construction" and fails to discern the rationale that could induce a state legislature to retain sovereign immunity for some torts while waiving it for others.

Although we have not expressly adopted § 310 of the Restatement,[109] it is persuasive authority that a cause of action would lie for a conscious misrepresentation involving risk of physical harm. It states:

> An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor
>
> (a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of physical harm to the other, and
>
> (b) knows
>
> (i) that the statement is false, or
>
> (ii) that he has not the knowledge which he professes.[110]

This section fits the facts determined by the district court. Gall was the "actor who ma[de] a misrepresentation." The parents were the "third person[s]." Their child was the "other." Thus, Gall is subject to liability to the parents' child which resulted from the act done by the parents (taking K.D.M. into their home) in reliance upon the truth of the representation, because Gall intended to induce the parents, or should have realized that her misrepresentation was likely to induce action by the parents, which involved an unreasonable risk of physical harm to the parents' child, and Gall knew that the statement was false. This section is found in a division of the Restatement on negligence, so it is no surprise a comment stated that the liability in § 310 "is negligence liability and is enforced in an

---

[109] Restatement, *supra* note 79.

[110] *Id.* at 103.

ordinary negligence action."[111] What is important is that § 310 is located in a section of the Restatement that is not limited to commercial or business transactions and expressly extends to liability for physical harm.

[14] We agree with those courts finding that the misrepresentation exception can apply to claims for personal injuries as well as economic injuries and to claims not involving business transactions. We are persuaded by the reasoning of *Najbar v. U.S.*[112] As that court observed, while the U.S. Supreme Court has explicitly recognized that the misrepresentation exception would arise most often in the course of business transactions,[113] the Court has not declared that the exception is applicable only in the commercial context. And § 310 of the Restatement provides persuasive authority that conscious misrepresentation can be the basis for liability for physical harm.

[15] The doctrine of strict construction supports our conclusion that the misrepresentation exception applies in a case such as this one. As we explained earlier, statutes purporting to waive the protection of sovereign immunity of the State or its subdivisions are strictly construed in favor of the sovereign and against the waiver, and a waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.[114] Thus, the misrepresentation exception must be strictly construed in favor of the government.[115] In doing so, we cannot eliminate its application to a claim—the "essence" of which "is the communication of misinformation on which the recipient relies"[116]—merely because the claim does not involve pecuniary loss or

---

[111] Restatement, *supra* note 77, § 557A, comment *a.* at 149.

[112] *Najbar v. U.S., supra* note 94.

[113] See *United States v. Neustadt, supra* note 65.

[114] See *Lamb v. Fraternal Order of Police Lodge No. 36, supra* note 31.

[115] See *Zelaya v. U.S., supra* note 87.

[116] *Block v. Neal, supra* note 66, 460 U.S. at 296.

a financial transaction. If the Legislature wishes to expand the scope of the State's liability by limiting application of the misrepresentation exception to claims arising from commercial transactions or which involve only pecuniary losses, it has the power to amend the statute accordingly.

### (ii) Gravamen of Complaint Test

Next, the parents contend that the gravamen of the complaint test is inapplicable. In arguing that the test is not appropriate in a case for personal injury, the parents repeat their contention that misrepresentation as a tort involves pecuniary or commercial loss only. Again, we disagree.

The gravamen of the parents' allegations of negligence was the communication of misinformation. Had the State, through Gall, not provided the parents with false information, the parents' child would not have been harmed (because either they would not have accepted K.D.M. in their home or they would have implemented appropriate safeguards). Under the reasoning of *Stonacek*,[117] it is immaterial whether Gall negligently failed to disclose or warn of K.D.M.'s sexual history or whether Gall intentionally concealed that sexual history. In *Stonacek*, we held that a claim for failure to communicate relevant information was barred by the misrepresentation exception. Here, the parents' allegations of "failure to warn" and "failure to disclose" essentially assert a failure to communicate critical information. And as in *Stonacek*, those claims, no matter how pled, are claims of misrepresentation. This is not a case where the cause of action only collaterally involves a misrepresentation; rather, the cause of action arises out of and is grounded on misrepresentation.

### (iii) Independent Operational
### Duty to Disclose

The parents argue that it was error to find their claim barred by the misrepresentation exception, because they assert that

---

[117] *Stonacek v. City of Lincoln, supra* note 69.

the State had an independent operational duty to disclose K.D.M.'s sexual history. A governmental entity "'is liable for injuries resulting from negligence in performance of operational tasks even though misrepresentations are collaterally involved.'"[118] But again, we look to *Stonacek* and the gravamen of the complaint.

In *Stonacek*, we addressed whether the failure to disclose could fall outside the misrepresentation exception because it alleged negligent performance of operational tasks. In doing so, we cited and discussed the decisions in *Neustadt* and *Block*. In *Neustadt*, the plaintiff claimed it suffered money damages as a result of an erroneous appraisal conducted by a government agency. The U.S. Supreme Court found the erroneous appraisal was a misrepresentation, and thus, the claim was barred by sovereign immunity. In *Block*, the plaintiff alleged it suffered money damages when a government agency breached a duty to supervise construction of a new home. The *Block* Court noted that although part of the theory was that the government agency failed to communicate information about the construction, the plaintiff also alleged the agency had a separate duty to act by supervising the construction. Because it was the failure to supervise that caused the harm, the *Block* Court concluded the claim was not barred by the misrepresentation exception.

Where the gravamen of the complaint is negligent performance of operational tasks rather than misrepresentation, the State cannot rely upon the misrepresentation exception in the State Tort Claims Act.[119] The misrepresentation exception "does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty."[120] But to avoid dismissal based on the misrepresentation

---

[118] *Zelaya v. U.S., supra* note 87, 781 F.3d at 1336.

[119] *Stonacek v. City of Lincoln, supra* note 69.

[120] *Block v. Neal, supra* note 66, 460 U.S. at 297.

exception, a plaintiff must allege injury independent of that caused by the erroneous information.[121]

Even though the State had a duty to warn of K.D.M.'s sexual history, the facts of this case fall within the misrepresentation exception. As *Neustadt*, *Block*, and *Stonacek* make clear, to fall outside the scope of the misrepresentation exception, the question is not whether the government had an independent duty to take action; rather, the question is whether the duty on which a plaintiff bases his or her claim is a duty separate and apart from the duty to disclose information. Here, the complaint alleged that Jill "inquired whether there was anything sexual in [K.D.M.'s] record, [and] Gall stated 'no.'" The parents claim that Gall "knew or should have known of [K.D.M.'s record of sexual abuse] but refused to disclose such information." Their complaint focuses on the failure to disclose the information, but the essence of the claim is the breach of a duty not to miscommunicate. And they have not alleged injury independent of that caused by the erroneous information. Any operational duty to disclose information or to warn the parents about K.D.M.'s sexual history is subsumed by the misrepresentation exception.

The parents rely upon our decision in *Fuhrman v. State*,[122] arguing that both cases rest on the complete failure to convey information. In *Fuhrman*, the Department of Health and Human Services was aware that one of its wards had a history of physical violence against his caregivers and others. But a department employee did not tell anyone at the hospital where the ward was taken about the ward's violent history or that the ward was likely to target female staff members. At the hospital, the ward attacked a female psychiatric technician. The technician sued, claiming that appellants were negligent in failing to disclose to the hospital and its employees information regarding the ward's assaultive behavior. Near the close

---

[121] See *Stonacek v. City of Lincoln, supra* note 69.

[122] *Fuhrman v. State, supra* note 4.

of trial, appellants moved for leave to amend their answer to include affirmative defenses of sovereign and qualified immunity, based on their understanding that the technician was asserting that appellants had misrepresented the ward's medical history. The district court denied the motion, and we found no abuse of discretion.

*Fuhrman* is distinguishable. The affirmative defense of sovereign immunity was not pled in an answer prior to trial. We considered it only in the context of whether the trial court abused its discretion in denying a motion to amend the answer—made near the end of trial—to include the defense. Here, the State asserted the defense in its operative answer.

[16] Further, *Fuhrman* contains language that is irreconcilable with *Stonacek*. In *Fuhrman*, we stated that "neither [the technician's] theory of the case nor her evidence was based on misrepresentation, but, rather, on a complete failure to convey the critical information, without an inference that this was deliberately done."[123] We noted that the trial court's decision was "based on failure to disclose information."[124] However, *Stonacek* clearly holds that an allegation of failure to advise was a claim based on misrepresentation. Our opinion in *Stonacek* did not discuss or cite *Fuhrman*, but the two cases are in conflict. Because we are persuaded by the reasoning of *Stonacek*, we expressly disapprove of *Fuhrman* to the extent it holds that "a complete failure to convey the critical information, without an inference that this was deliberately done,"[125] falls outside the misrepresentation exception.

[17] No matter how the parents try to frame their complaint, their claim arises out of a misrepresentation. As the 11th Circuit has stated: "'It is the substance of the claim and not the language used in stating it which controls' whether the claim is barred by an FTCA exception. . . . Thus, a plaintiff

---

[123] *Id.* at 183, 655 N.W.2d at 873.

[124] *Id.*

[125] *Id.*

cannot circumvent the misrepresentation exception simply through artful pleading of its claims."[126] Gall's misstatement is essential to the parents' claim. Although they frame their claim as a negligence action, the basis for it is Gall's underlying misrepresentation.

### (iv) Public Policy

The parents assert that the State should not be immune from liability for failing to properly disclose the history of an adoptee to potential parents as a matter of public policy. But such policy judgments are properly within the province of the Legislature, not this court.

### 4. Negligent Supervision

The parents argue that the district court erred in failing to find the State liable for negligent supervision. They contend that the evidence clearly established that Gall was overworked and that her supervisor was responsible for Gall's workload.

Recasting an excepted tort claim as a negligence claim does not avoid the bar of immunity. In *Johnson v. State*,[127] we determined that a negligence claim asserting failure to supervise, hire, and discipline was barred because it arose out of assault and battery. In that case, we adopted the reasoning of four of the eight participating justices in a U.S. Supreme Court case,[128] who stated:

"[The plaintiff] cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like [the

---

[126] *JBP Acquistions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1264 (11th Cir. 2000).

[127] *Johnson v. State, supra* note 15.

[128] *United States v. Shearer, supra* note 53.

plaintiff's] that sound in negligence but stem from a bat-
tery committed by a Government employee."[129]
We also agreed with a justice's concurrence in a different U.S.
Supreme Court case:

"To determine whether a claim arises from an intentional
assault or battery and is therefore barred by the exception,
a court must ascertain whether the alleged negligence was
the breach of a duty to select or supervise the employee-
tortfeasor or the breach of some separate duty indepen-
dent from the employment relation. . . . If the allegation
is that the Government was negligent in the supervision
or selection of the employee and that the intentional tort
occurred as a result, the intentional tort exception . . .
bars the claim. Otherwise, litigants could avoid the sub-
stance of the exception because it is likely that many, if
not all, intentional torts of Government employees plausi-
bly could be ascribed to the negligence of the tortfeasor's
supervisors. To allow such claims would frustrate the
purposes of the exception."[130]

The same principle applies here. The parents' negligent
supervision claim is barred, because it arises out of misrepre-
sentation. Any alleged negligence was inextricably linked to
the misrepresentation. The district court did not err by failing
to find the State liable for negligent supervision, because this
claim was also barred by the State Tort Claims Act.

## VI. CONCLUSION

The Legislature may wish to consider whether the rationale
underlying the intentional torts exception, at least as to mis-
representation and deceit, continues to justify preservation of
the State's sovereign immunity. From the perspective of the

---

[129] *Johnson v. State, supra* note 15, 270 Neb. at 320, 700 N.W.2d at 624
(emphasis in original).

[130] *Id.* at 322, 700 N.W.2d at 625, quoting *Sheridan v. United States*, 487 U.S.
392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988) (Kennedy, J., concurring
in judgment).

parents, immunity "adds insult to injury." Their child was the one, so to speak, "run over by the truck." And it may well be that time has demonstrated that Congress' fears—of the difficulty of defending such suits and the probability of judgments against the government in amounts out of proportion to the damages actually suffered by claimants—have proved unfounded. It may be time for the "next step" envisioned by the commentator. But it is absolutely clear that those questions are properly addressed to the Legislature and not to us. And we express no opinion whether the parents have any avenue to compensation through legislative action.

We must strictly construe the misrepresentation exception to the waiver of sovereign immunity in favor of the State and conclude that so construed, it cannot be definitively limited to claims involving pecuniary losses.

Because the parents' claims arise out of Gall's misrepresentation, they are barred. We affirm the judgment of the district court.

AFFIRMED.